1  BLANK ROME LLP
   Jonathan A. Loeb (SBN 162758)
2  jonathan.loeb@blankrome.com
   2029 Century Park East | 6th Floor
3  Los Angeles, CA 90067
   Telephone:  424.239.3400
4  Facsimile:   424.239.3434

5  Craig Weiner (*pro hac vice* application to be filed)
   craig.weiner@blankrome.com
6  Reena Jain (*pro hac vice* application to be filed)
   reena.jain@blankrome.com
7  1271 Avenue of the Americas
   New York, NY 10020
8  Telephone:  212.885.5000
   Facsimile:   212.885.5001

9
   Attorneys for Plaintiffs
10 CURTIS J. JACKSON, III AND NYC VIBE, LLC

11          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
12

13
   CURTIS J. JACKSON, III and NYC VIBE,     Case No. 2:25-cv-3623
14 LLC,
                                            **COMPLAINT FOR:**
15                    Plaintiffs,
                                            **[1] TRADEMARK**
16        v.                                **INFRINGEMENT [15 U.S.C.**
                                            **§ 1114]**
17 RYAN KAVANAUGH, SKILL HOUSE             **[2] FALSE ADVERTISING AND**
   MOVIE LLC, and GENTV LLC,               **UNFAIR COMPETITION [15**
18                                          **U.S.C. § 1125(a)]**
                     Defendants.            **[3] VIOLATION OF COMMON**
19                                          **LAW RIGHT OF PUBLICITY**
                                            **[4] VIOLATION OF STATUTORY**
20                                          **RIGHT OF PUBLICITY**
                                            **[CALIFORNIA CIVIL CODE**
21                                          **§ 3344]**
                                            **[5] UNFAIR COMPETITION**
22                                          **[CAL. BUS. & PROF. CODE**
                                            **§ 17200]**
23                                          **[6] FALSE ADVERTISING [CAL.**
                                            **BUS. & PROF. CODE § 17500]**
24                                          **[7] COMMON LAW**
                                            **TRADEMARK INFRINGEMENT**
25                                          **[8] COMMON LAW UNFAIR**
                                            **COMPETITION**
26

27                                          **[DEMAND FOR JURY TRIAL]**

28

Plaintiffs Curtis J. Jackson, III ("Jackson") and NYC Vibe, LLC ("NYC Vibe") (collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants Ryan Kavanaugh ("Kavanaugh"), Skill House Movie LLC ("Skill House Movie"), and GenTV LLC ("GenTV") (collectively, "Defendants"), hereby allege as follows:

## STATEMENT OF THE CASE

1.    This action concerns Defendants' brazen and unauthorized attempts to use the name, image, voice, and trademarks of Curtis J. Jackson, III p/k/a "50 Cent" to extensively promote, market, and sell Defendants' film *Skill House* (the "Film") and streaming platform GenTV.

2.    Although Jackson had discussions with Kavanaugh about acting in and producing the Film, the parties never reached a final agreement. Jackson trusted Kavanaugh—who, despite a series of scandals and bankruptcies, is a well-known name in Hollywood—and provided his acting services with the expectation that the parties would continue to negotiate and, hopefully, reach an agreement.

3.    That trust was misplaced. No final agreement was ever signed; nevertheless, Defendants have billed Jackson as the star and producer of the Film. Defendants have shamelessly and deceptively marketed the Film as a "50 Cent Movie" and "produced by 50 Cent," when it is nothing of the sort. They have also prominently featured Jackson's name, image, voice, and other identifying characteristics in the Film itself and in various promotional materials.

4.    Despite publicly labeling Jackson as a producer of the Film, Jackson was given no creative input into the Film. Indeed, Defendants' counsel claim that Jackson does not have approval rights over the Film itself. Jackson never would have agreed to be associated with a film absent an opportunity to confirm and ensure that it met his high standards; anything less would irreparably damage his carefully curated and award-winning reputation as a film and television producer.

1

5.     To add insult to injury, Defendants have not paid Jackson a dime in connection with their unauthorized use of Jackson's services and intellectual property in connection with the Film.

6.     To make matters worse, Defendants have not stopped at misappropriating Jackson's valuable intellectual property for the Film alone: they are also using Jackson's intellectual property and the Film to promote their new streaming platform, GenTV—a platform which directly competes with Jackson's own streaming channel, 50 Cent Action. In other words, Defendants plan not only to steal Jackson's reputation and goodwill amongst his millions of fans to boost their own film, but also to use that film to unfairly compete with Jackson's other business ventures. Obviously, Jackson never would have agreed to allow his intellectual property to be used in such a manner.

7.     Despite Plaintiffs' repeated objections and demands to cease and desist, Defendants continue to infringe and misappropriate Plaintiffs' intellectual property rights and intend to release the Film in the coming weeks (if not days). Should the Film be released publicly, Jackson faces irreparable harm to his valuable brand and reputation. This Court must therefore enjoin Defendants from releasing the Film and using Jackson's intellectual property to promote the Film and the GenTV platform.

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademarks) because Plaintiffs' claims arise under the Lanham Act, 15 U.S.C. § 1121 *et seq*.

9.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state law claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over Kavanaugh because, on information and belief, he is domiciled in the State of California.

11.   This Court has personal jurisdiction over Skill House Movie because, on information and belief, it is registered to do business under the laws of the State of California and maintains its principal place of business in the State of California.

12.   This Court has personal jurisdiction over GenTV because, on information and belief, it is registered to do business under the laws of the State of California and maintains its principal place of business in the State of California.

13.   Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to this action occurred in this District.

**Parties**

14.   Plaintiff Jackson is an individual who is domiciled in the State of Texas. Jackson is a world-famous rapper, actor, producer, entrepreneur, and philanthropist who is professionally known as "50 Cent." Given his extensive and successful career, Jackson's name, image, voice, and other intellectual property have substantial commercial value.

15.   Plaintiff NYC Vibe is a Delaware limited liability company. NYC Vibe is used to hold Jackson's intellectual property, including but not limited to his valuable 50 Cent Marks (defined below).

16.   Defendant Kavanaugh is a film and television financier and producer. Upon information and belief, Kavanaugh is domiciled in Los Angeles County, California. Upon information and belief, Kavanaugh directly or indirectly owns and/or controls Skill House Movie and GenTV.

17.   Defendant Skill House Movie is a Delaware limited liability company and is also registered in California. Upon information and belief, Skill House Movie maintains an office in Los Angeles County, California. Upon information and belief, Skill House Movie serves as the producer for the Film.

18.   Defendant GenTV is a Delaware limited liability company and is also registered in California. Upon information and belief, GenTV maintains an office in

3

Los Angeles County, California. Upon information and belief, GenTV serves as the production company for the Film.

### Facts Common to All Claims for Relief

### Jackson's Valuable Intellectual Property and Brand

19.    Jackson is one of the most recognized and admired artists and entrepreneurs in the world. As a result of his enormous fame, Jackson's name, image, and voice enjoy widespread recognition and his intellectual property commands a high monetary value. For example, a 2024 Billboard article named him as only the second rapper to ever exceed $100 million in earnings, and the eighth-highest grossing rapper of all time.

20.    In addition to his extensive musical career, Jackson has created, produced, and directed a number of television shows, films, and documentaries, including *Power* and multiple spin-offs on Starz; *For Life* on ABC; and *Black Mafia Family* on Starz. (Many of Jackson's film and television endeavors are conducted through his company G-Unit Film & Television, Inc. ("G-Unit").)

21.    Jackson has also forayed into acting, and has starred in well-known films, including *Southpaw*, *Expend4bles*, and *Den of Thieves*, and popular television shows, including *Power* and *For Life*.

22.    Jackson continues to expand his film and television empire. Over the past several years he has developed a high-profile partnership with the city of Shreveport, Louisiana to launch a film and television studio, which will expand Jackson's production portfolio and provide much-needed employment and economic development opportunities to the city and surrounding area.

23.    And in 2024, Jackson partnered with entertainment company Lionsgate to launch a free, advertising-supported streaming channel called "50 Cent Action," which is available on the Roku and LG Channels streaming service. 50 Cent Action features premium films and television series hand-selected by Jackson from

Lionsgate's extensive library of tens of thousands of titles, including Jackson's own projects.

24.    Jackson is the owner of the valid and legally protectable mark 50 CENT. Jackson, through NYC Vibe, has common law rights in the 50 CENT mark and has registered or applied to register the 50 CENT mark in the United States and across the world for various goods and services, including but not limited to entertainment services in the nature of musical performances (U.S. Trademark Registration No. 2,807,302[1]) and the production and distribution of television shows and movies and entertainment services in the nature of televised and movie appearances (U.S. Trademark Serial No. 97/155,408[2]) (collectively, the "50 Cent Marks"). True and correct copies of Registration No. 2,807,302 and Serial No. 97/155,408 are attached hereto as Exhibits A and B, respectively.

25.    As a result of his immense fame and popularity, Jackson regularly receives lucrative offers to license the use of his name, image, voice, and other intellectual property to promote a wide variety of goods and services. In order to maintain the integrity of his brand, Jackson is extremely selective about what goods or services he will agree to endorse. Accordingly, Jackson maintains strict control over the manner in which his name, image, voice, and other intellectual property are used and is highly compensated for any such use.

26.    Jackson maintains a similar level of careful control over all his business ventures, including acting and producing opportunities. Despite a constant stream of requests, Jackson is very selective about which projects he lends his acting or producing services to in order to maintain his valuable brand and reputation.

---

[1] Registration No. 2,807,302 is incontestable.
[2] A Notice of Allowance has been issued for Serial No. 97/155,408.

**Negotiations Over the *Skill House* Film**

27.    In or about 2022, Jackson (both individually and through his company, G-Unit) entered into discussions with Skill House Movie and Kavanaugh for Jackson to potentially act in and produce the Film.

28.    The parties only got as far as negotiating a term sheet, but that term sheet was never finalized. Despite the drafts containing signature blocks for Jackson and G-Unit, neither signed any version of the term sheet. Upon information and belief, Skill House Movie never signed the term sheet either.

29.    It was understood and expected that any agreement with Kavanaugh and Skill House Movie would be negotiated and memorialized in a long-form, signed contract, and that the term sheet was just that—a term sheet which (once signed) would act as a placeholder pending a comprehensive agreement.

30.    To avoid unnecessary delay and based on a mistaken good-faith belief in Kavanaugh's promises and reputation, Jackson filmed scenes to be used in the Film once a final agreement was reached. (Jackson's minor son, Sire, also filmed scenes to be used in the Film.) Jackson expected that Kavanaugh and Skill House Movie would continue to negotiate, memorialize, and finalize an agreement between the parties in a long-form, signed contract.

31.    Jackson's trust in Kavanaugh was misplaced, and no final agreement (signed or otherwise) was ever reached between the parties regarding the Film.

32.    In fact, Jackson was never compensated (directly or through G-Unit) for his participation in the Film, either for his acting or for his purported role in producing the Film.[3] (Similarly, Jackson's son was not paid.)

33.    The lack of a final agreement and failure to compensate Jackson should come as no surprise because, on information and belief, Kavanaugh failed to keep

---

[3] To the extent Defendants claim they have a contract with Jackson (which Jackson denies), Defendants' failure to compensate him would be a material breach of any such contract.

proper records and unilaterally modified the Film's budget to the tune of millions of dollars making it virtually impossible for any backend compensation to be awarded.

**Defendants' Promotion of the Film Using Jackson's Name, Image, Voice, and Trademarks Without Authorization**

34.   Defendants have made Jackson the centerpiece of their promotional and marketing efforts for the Film.

35.   Not only is Jackson being used to promote the Film, but, on information and belief, Jackson is heavily featured in the Film.

36.   A roughly nine-minute clip from the Film is currently available for free on the GenTV streaming platform. The clip's on-screen credits prominently label it as "A 50 CENT MOVIE" and "PRODUCED BY 50 CENT." The clip also lists "Curtis '50 Cent' Jackson" as a cast member.

37.   The "official trailer" for the Film prominently features Jackson, and the description under the video states: "Starring multi-talented icon Curtis '50 Cent' Jackson."[4] The trailer even features distinctive bottles of Jackson's champagne, Le Chemin du Roi.

38.   Press coverage of the Film—which, on information and belief, is driven largely (if not entirely) by Defendants' marketing efforts—associates Jackson's name and reputation so closely with the Film such that the Film has been labeled as "50 Cent's film."[5]

---

[4]   *Skillhouse Official Trailer*, YouTube (Apr. 17, 2025), https://www.youtube.com/watch?v=aSneVvYtmY0.

[5]   *See, e.g.*, *50 Cent's Upcoming Horror Film 'Skillhouse' Reportedly So Intense It Made Crew Member Faint*, The Source (Apr. 14, 2025), https://thesource.com/2025/04/14/50-cents-upcoming-horror-film-skillhouse-reportedly-so-intense-it-made-crew-member-faint/; Anthony D'Alessandro, *50 Cent Horror Movie 'Skillhouse' From Ryan Kavanaugh's GenTv Sets Summer Release Via Fathom – CinemaCon*, Deadline (Mar. 31, 2025), https://deadline.com/2025/03/50-cent-skillhouse-release-date-1236354851/; Marc Griffin, *50 Cent To Star In New Social Media-Based Horror Movie 'Skill House'*, Vibe (July 12, 2022), https://www.vibe.com/news/movies-tv/50-cent-produce-star-skill-house-horror-

39.    The Film's Instagram page (@skillhousemovie) also features Jackson's name and trademarks, and claims that the Film stars "@50cent" and is produced by "@50cent."



40.    Despite Defendants prominently advertising Jackson's purported role as a producer of the Film, Jackson had no creative control over or input into the movie. Indeed, Defendants have maintained that Jackson has no approval rights over the Film.

**Defendants Are Capitalizing on Jackson's Reputation to Launch the GenTV Streaming Platform**

41.    Defendants are not only using Jackson's name, image, voice, and trademarks to promote the Film, but they are also using his intellectual property to promote their nascent streaming platform GenTV. Indeed, Defendants have used

---

film-1234677184/; Keith Langston, *50 Cent's new horror movie* Skill House *is so graphic, a cameraman passed out during bloody filming*, Entertainment Weekly (July 21, 2022), https://ew.com/movies/50-cents-new-horror-movie-so-graphic-cameraman-faints-during-filming/; EJ Panaligan, *50 Cent's New Horror Movie Is so Gory That the Cameraman Fainted*, Variety (Jul. 20, 2022), https://variety.com/2022/film/news/50-cent-horror-movie-cameraman-fainted-gory-1235321210/.

Jackson's intellectual property and the Film to market and launch the GenTV streaming platform. For example, the Film has been marketed as the "debut" project for GenTV.

42.    Defendants' efforts to associate Jackson and his intellectual property with GenTV include, on information and belief, sponsored articles designed to mimic organic, independent press coverage. Upon information and belief, these articles were not drafted by journalists, but by a marketing agency engaged by Defendants to promote GenTV.

43.    Based on public reports, it appears that Kavanaugh and GenTV's intended business model is to have public figures and influencers both participate in the platform's films and also take on the work of marketing the films that would traditionally be handled by the platform itself.[6]

44.    Indeed, a July 2024 press release from GenTV stated: "'Skillhouse' marks the beginning of an ambitious project by GENTV to release 5-10 films annually, each headlined by top influencers. These films will be uniquely distributed through two distinct platforms: short-form episodic films released on social media by the influencers and traditional full-length features available in theaters and all subsequent release windows, in an attempt to merge short and long form content consumption."[7]

---

[6] *See, e.g.*, Jon Stojan, *Ryan Kavanaugh's GENTV advances film, TV and streaming with record-breaking film, Skillhouse*, VentureBeat (Aug. 7, 2024), https://venturebeat.com/business/ryan-kavanaughs-gentv-advances-film-tv-and-streaming-with-record-breaking-film-skillhouse/ ("By selling episodes at $0.99 to $1.99 each and leveraging social media stars for direct selling, GENTV can generate substantial revenue before a movie's release…. [T]he shorts are all together different content than the movie."). The VentureBeat article is labeled as "Contributor Content" and contains the disclaimer that "VentureBeat newsroom and editorial staff were not involved in the creation of this content," hallmarks of paid-for promotional content—likely from Defendants—rather than independent journalism.

[7] *GENTV.COM's "Skillhouse" Shatters All Records with Unprecedented Engagement and Viewership Metrics*, Access Newswire (July 31, 2024), https://www.accessnewswire.com/newsroom/en/sports-leisure-and-

(As of the date of this Complaint, a link in that press release for "[m]ore information on GENTV.'s next films" simply redirects to the Film's webpage on GenTV's website.)

45.   Upon information and belief, Defendants planned—and still plan—to release the Film via GenTV. Defendants' counsel stated that there is no plan to release the Film on the GenTV platform, but as of the date of this Complaint, the Film is still being advertised, marketed, and promoted as though it will be released on GenTV. For example, the Film is still featured on GenTV's website (https://skillhouse.gentv.com/). The Film's Instagram account also links to GenTV's home page (https://www.gentv.com/), which redirects to a separate website for the Film (https://skillhouse.movie/).

46.   GenTV, as a startup streaming platform, is a direct competitor to Jackson's own streaming channel, 50 Cent Action. Jackson never would have agreed to, in effect, compete with himself. (Even the draft, unsigned term sheet does not contemplate a release via GenTV.)

47.   Before the filing of this Complaint, Jackson repeatedly raised this issue with Defendants. For example, in August 2024, the publication Maxim published an online article entitled "50 Cent & Ryan Kavanaugh Take On Hollywood With Influencer-Driven GenTV," falsely implying that Jackson was affiliated with and even had a leadership or ownership role at GenTV. Jackson's representatives immediately reached out to Kavanaugh to ask him to facilitate a correction. Kavanaugh claimed that he (or his representatives) told the publication that Jackson was an "owner" of the Film (itself a false statement) but that the publication misunderstood and described Jackson as an owner of GenTV.

48.   Kavanaugh's explanation was dubious. The Maxim article is labeled as a "Partner" article, meaning that it is a paid-for piece and not genuine press coverage.

entertainment/gentvcoms-skillhouse-shatters-all-records-with-unprecedented-engage-894311.

10

(Maxim's website explains: "Any content on Maxim.com which includes the disclaimer language "Partner" … represents sponsored advertising content …."). In other words, the false association between Jackson and GenTV was a deliberate marketing effort by Defendants, not a reporter's misunderstanding.

49.    Jackson's representatives explained to Kavanaugh that Jackson had "just launched [his] own streaming channel" and that "[t]his is a conflict for us." They also explained that Jackson or his representatives needed to review and approve press releases or other public statements involving or referencing Jackson.

50.    In response to Jackson's complaint, the title on the Maxim article was changed to remove reference to GenTV: "50 Cent & Ryan Kavanaugh Take On Hollywood With 'Skill House,' A Revolutionary Influencer-Driven Project."[8]

51.    Despite having raised concerns months ago, Jackson's name, image, and trademarks still feature prominently across the GenTV platform. For example, on the Film's webpage on GenTV's website, Jackson is listed in a "Starring" role and a video clip from the Film—which starts with a prominent image of Jackson and features him throughout—automatically plays in the background.[9] There is no other substantive content on GenTV's website. It appears that GenTV is entirely based on the Film, and

---

[8] *50 Cent & Ryan Kavanaugh Take On Hollywood With 'Skill House,' A Revolutionary Influencer-Driven Project*, Maxim (Aug. 9, 2024), https://www.maxim.com/partner/50-cent-ryan-kavanaugh-take-on-hollywood-with-influencer-driven-gentv/.

[9] https://skillhouse.gentv.com/.

the Film is primarily based on Jackson.



**The Film's Release**

52.    According to an April 22, 2025 email from Defendants' counsel, the Film is scheduled to be released to the public on July 11, 2025.[10]

53.    Jackson    and    his    counsel    and    representatives    had    multiple communications with Defendants' counsel in the weeks before the scheduled release of the Film. Despite Jackson's efforts to amicably resolve this dispute without judicial intervention, Defendants' counsel deny that there is any dispute. They also claim that Jackson has no "approval rights" over the Film, despite it being marketed as a "50 Cent Movie" and "produced by 50 Cent."

---

[10] In addition to the method(s) by which Defendants plan to release the Film, there remains significant uncertainty as to the Film's release date(s). For example, a "pinned" post on the Film's Instagram account, @skillhousemovie, states: "Release date April 25th theatrical!" (That same post includes an image of a poster for the Film, which features Jackson's name and image.) Similarly, the industry website IMDB states: "COMING SOON Releases April 25, 2025" and "April 25, 2025 (Internet)." And in a previous conversation held on April 17, 2025, the same counsel for Defendants stated that the Film was going to be released at the end of April.

54. Even more concerning, Defendants' counsel have represented that Defendants have been exploring the "franchise potential" for the Film, "including sequels, prequels, spin-offs, and remakes, which are currently in various stages of development," indicating that Defendants will continue to infringe and misappropriate Jackson's intellectual property for years to come if not enjoined from such behavior.

55. Unable to reach a resolution with Defendants, and with the Film's release date fast approaching, Jackson was left with no choice but to file this lawsuit.

### First Cause of Action

### Trademark Infringement, 15 U.S.C. § 1114

### All Plaintiffs Against All Defendants

56. Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 55 as though set forth fully herein.

57. Plaintiff Jackson, through Plaintiff NYC Vibe, is the owner of the 50 Cent Marks. The 50 Cent Marks, although inherently distinctive, have also acquired substantial goodwill and secondary meaning.

58. Defendants have made unauthorized use of the 50 Cent Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods or services in violation of 15 U.S.C. § 1114. Defendants have not been authorized by Plaintiffs to use the 50 Cent Marks in any manner. This infringement by Defendants has been deliberate and willful.

59. Defendants' unauthorized use in commerce of the 50 Cent Marks as alleged herein is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, sponsorship, or endorsement of Defendants' goods and services, including but not limited to the Film and the GenTV platform, and is likely to cause consumers to believe, contrary to fact, that Defendants and their goods and services are affiliated with, sponsored by, or endorsed by Plaintiffs.

60. Unless restrained and enjoined by this Court, Defendants will continue to make unauthorized use of the 50 Cent Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods or services.

61. Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiffs' rights in the 50 Cent Marks and with the willful intent to cause confusion and trade on Plaintiffs' goodwill and reputation.

62. By reason of this unauthorized use of the 50 Cent Marks, or marks confusingly similar thereto, Defendants have unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiffs have suffered, and will continue to suffer, substantial damages and irreparable injury.

63. Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive relief.

## Second Cause of Action

### False Advertising and Unfair Competition, 15 U.S.C. § 1125(a)

### All Plaintiffs Against All Defendants

64. Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 63 as though set forth fully herein.

65. Defendants have made false and misleading representations of fact, including the unauthorized use of Jackson's name, image, and other intellectual property rights in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of goods or services, including but not limited to the Film and the GenTV platform, in violation of 15 U.S.C. § 1125(a). Defendants have not been authorized by Plaintiffs to use Jackson's name, image, or other intellectual property rights in any manner. This unauthorized use by Defendants has been deliberate and willful.

66. Defendants' unauthorized use in interstate commerce of Jackson's name, image, and other intellectual property rights as alleged herein is likely to cause

confusion, cause mistake, or deceive consumers as to the affiliation, sponsorship, or endorsement of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants and their goods and services are affiliated with, sponsored by, or endorsed by Plaintiffs.

67.    Unless restrained and enjoined by this Court, Defendants will continue to make unauthorized use of Jackson's name, image, and other intellectual property rights in commerce in connection with the sale, offering for sale, distribution, and advertising of goods or services.

68.    Defendants have committed this unauthorized use with the willful intent to cause confusion and trade on Plaintiffs' goodwill and reputation.

69.    By reason of this unauthorized use of Jackson's name, image, and other intellectual property rights, Defendants have unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiffs have suffered, and will continue to suffer, substantial damages and irreparable injury.

70.    Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive relief.

### Third Cause of Action
### Violation of Common Law Right of Publicity
### Plaintiff Jackson Against All Defendants

71.    Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 70 as though set forth fully herein.

72.    Through Defendants' unauthorized use of Jackson's identity, including but not limited to his name, image, and voice, Defendants have misappropriated Jackson's rights in his name and identity as provided under the common law right of publicity.

73.    In exploiting and appropriating Jackson's exclusive publicity rights, Defendants have damaged and are continuing to damage those rights by, among other

things, tarnishing and exploiting those rights without Jackson's permission, thus diminishing their value, including without limitation their value for future licensing. Further, Defendants have injured and continue to injure Jackson by exploiting his publicity rights without Jackson retaining control thereof or receiving any income properly owing to him as the sole owner of his rights of publicity.

74.    Defendants did not engage in such wrongful actions out of any sincere or proper motive, but did so knowingly, willfully, oppressively, and maliciously, intending to appropriate to themselves without compensation what they knew to be Jackson's valuable rights. Said misconduct was also fraudulent, in that the public has been misled and will continue to be misled to believe, incorrectly, that Jackson consented to such commercial use of his name and identity, when in fact he did not, and that Jackson is endorsed the Film and the GenTV platform, when in fact he did not.

75.    As a direct and proximate result of Defendants' conduct, Jackson has suffered, and will continue to suffer, substantial damages and irreparable injury.

76.    Jackson has no adequate remedy at law and is therefore entitled to injunctive relief.

### **Fourth Cause of Action**

### **Violation of Statutory Right of Publicity, California Civil Code § 3344**

### **Plaintiff Jackson Against All Defendants**

77.    Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 76 as though set forth fully herein.

78.    Defendants have misappropriated Jackson's publicity rights, including but not limited to his name, image, and voice, for purposes of advertising and selling their goods or services without Jackson's permission, in violation of California Civil Code § 3344.

79.    In knowingly exploiting Jackson's publicity rights, Defendants have damaged and are continuing to damage those rights by, among other things, tarnishing

and trivializing those rights, thus diminishing their value, including without limitation their value for future licensing. Further, Defendants have injured and continue to injure Jackson by purporting to exercise Jackson's publicity rights without Jackson retaining control thereof or receiving any income properly owing to him as the sole owner of his right to publicity.

80.    Defendants did not engage in such wrongful actions out of any sincere or proper motive, but did so knowingly, willfully, and oppressively, intending to appropriate to themselves without compensation what they knew to be Jackson's valuable rights. Said misconduct was also fraudulent, in that the public has been misled and will continue to be misled to believe, incorrectly, that Jackson consented to such commercial use of his name and identity, when in fact he did not, and that Jackson endorsed the Film and the GenTV platform, when in fact he did not.

81.    As a direct and proximate result of Defendants' conduct, Jackson has suffered, and will continue to suffer, substantial damages and irreparable injury.

82.    Jackson has no adequate remedy at law and is therefore entitled to injunctive relief.

## Fifth Cause of Action

### Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### All Plaintiffs Against All Defendants

83.    Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 82 as though set forth fully herein.

84.    Defendants have engaged in fraudulent, unfair, and unlawful conduct in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* Specifically, Defendants have competed unfairly, deceptively, untruly, and misleadingly by, among other things, knowingly and willfully making unauthorized use of Jackson's name, image, and other intellectual property rights in connection with their efforts to sell and market goods and services, including the Film and the GenTV platform.

85.   For example, Defendants have engaged in marketing efforts which falsely state or imply that Jackson is affiliated with, and even has an ownership role with, the GenTV platform. These statements are false and misleading. Jackson did not authorize his name, image, or other intellectual property rights to be used in connection with the Film or the GenTV platform.

86.   As a result of Defendants' unlawful actions, consumers are likely to be confused and deceived. For example, consumers are likely to believe that Jackson is affiliated with or endorses the GenTV streaming platform, when in fact Jackson has his own competing streaming channel. Similarly, consumers are likely to believe that Jackson endorsed the Film, when in fact he had no creative input into the Film whatsoever.

87.   Defendants' actions have been and continue to be knowing and willful.

88.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered injury and irreparable harm and will continue to suffer such injury and irreparable harm unless Defendants are enjoined from such further conduct.

### Sixth Cause of Action

### False Advertising, Cal. Bus. & Prof. Code § 17500

### All Plaintiffs Against All Defendants

89.   Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 88 as though set forth fully herein.

90.   Defendants have published or disseminated intentionally false and misleading statements in an effort to associate Jackson with the Film and the GenTV platform.

91.   For example, Defendants have engaged in marketing efforts which falsely state or imply that Jackson is affiliated with, and even has an ownership role with, the GenTV platform. These statements are false and misleading. Jackson did not authorize his name, image, or other intellectual property rights to be used in connection with the Film or the GenTV platform.

92.   As a result of Defendants' unlawful conduct, the public and potential consumers of the types of goods and services Defendants offer are likely to be confused and deceived. For example, consumers are likely to believe that Jackson is affiliated with or endorses the GenTV streaming platform, when in fact Jackson has his own competing streaming channel. Similarly, consumers are likely to believe that Jackson endorsed the Film, when in fact he had no creative input into the Film whatsoever.

93.   Defendants' actions have been and continue to be knowing and willful.

94.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm and will continue to suffer such harm unless Defendants are enjoined from such further conduct.

## Seventh Cause of Action

### Trademark Infringement, California Common Law

### All Plaintiffs Against All Defendants

95.   Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 94 as though set forth fully herein.

96.   Jackson, directly or through NYC Vibe, is the owner of the 50 Cent Marks and other valuable intellectual property. The 50 Cent Marks, although inherently distinctive, have also acquired substantial goodwill and secondary meaning.

97.   Defendants have made unauthorized use of the 50 Cent Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods or services. Defendants have not been authorized by Plaintiffs to use the 50 Cent Marks in any manner. This infringement by Defendants has been deliberate and willful.

98.   Defendants' unauthorized use in commerce of the 50 Cent Marks as alleged herein is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, sponsorship, or endorsement of Defendants' goods and services, including but not limited to the Film and the GenTV platform, and is likely to cause

consumers to believe, contrary to fact, that Defendants and their goods and services are affiliated with, sponsored by, or endorsed by Plaintiffs.

99.    Unless restrained and enjoined by this Court, Defendants will continue to make unauthorized use of the 50 Cent Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods or services.

100.  Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiffs' rights in the 50 Cent Marks and with the willful intent to cause confusion and trade on Plaintiffs' goodwill and reputation.

101.  By reason of this unauthorized use of the 50 Cent Marks, Defendants have unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiffs have suffered, and will continue to suffer, substantial damages and irreparable injury.

102.  Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive relief.

## Eighth Cause of Action

### Unfair Competition, California Common Law

### All Plaintiffs Against All Defendants

103.  Plaintiffs reallege and incorporate by reference the allegations against all Defendants contained in paragraphs 1 through 102 as though set forth fully herein.

104.  Through their unauthorized use of Jackson's name, image, and other valuable intellectual property rights, including the 50 Cent Marks, Defendants have willfully and without permission misappropriated Jackson's intellectual property rights. These unlawful actions by Defendants have harmed Plaintiffs' investment and goodwill in Jackson's reputation, as well as his other intellectual property rights, including the 50 Cent Marks.

105.  Jackson's name, image, and other intellectual property rights, including the 50 Cent Marks, have acquired substantial goodwill and secondary meaning. Despite that, Defendants without authorization made use of Jackson's intellectual

property in order to mislead consumers into associating Jackson with the Film and the GenTV platform.

106. For example, Defendants have engaged in marketing efforts which falsely state or imply that Jackson is affiliated with, and even has an ownership role with, the GenTV platform. These statements are false and misleading. Jackson did not authorize his name, image, or other intellectual property rights to be used in connection with the Film or the GenTV platform.

107. As a result of Defendants' unlawful actions, consumers are likely to be confused and deceived. For example, consumers are likely to believe that Jackson is associated with or endorses the GenTV streaming platform, when in fact Jackson has his own competing streaming channel. Similarly, consumers are likely to believe that Jackson endorsed the Film, when in fact he had no creative input into the Film whatsoever.

108. Defendants' actions have been and continue to be knowing and willful.

109. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer, substantial damages and irreparable injury.

110. Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive relief.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1. For entry of a preliminary and permanent injunctions prohibiting Defendants and each of their agents, owners, shareholders, partners, employees, attorneys, assigns, and all others associated or acting in concert with them from committing further unlawful or infringing acts including:

        a. Releasing the *Skill House* film to the public;

b. Using Plaintiffs' intellectual property in connection with the sale, offering for sale, distribution, and advertising of the *Skill House* film;

c. Using Plaintiffs' intellectual property in connection with the sale, offering for sale, distribution, and advertising of the GenTV streaming platform;

d. Engaging in any further acts of infringement and/or misappropriation of Plaintiffs' intellectual property rights, including the 50 Cent Marks;

e. Making, implying, or displaying statements or representations that are likely to lead the public to believe that Plaintiffs in any way approved or endorsed the *Skill House* film and/or the GenTV streaming platform or authorized Plaintiffs' intellectual property to be used in connection with the *Skill House* film and/or the GenTV streaming platform;

f. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited under any claim alleged herein;

2. For an award to Plaintiffs of actual damages in an amount to be proven at trial, but no less than $5,000,000;

3. For an order that Defendants account and pay to Plaintiffs all profits derived from Defendants' unlawful conduct;

4. For an award to Plaintiffs of Defendants' aforementioned profits resulting from their unlawful conduct;

5. For an award to Plaintiffs of treble damages and increased profits;

6. For an award to Plaintiffs of punitive and exemplary damages;

7. For an award to Plaintiffs of interest in an amount according to law;

8. For an award to Plaintiffs of their reasonable attorneys' fees and costs; and

22

9.    For an award to Plaintiffs of such other and further relief at law or in equity as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury trial in this action on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  April 24, 2025                    BLANK ROME LLP


By: /s/ *Jonathan A. Loeb*
                    Jonathan A. Loeb
                    Attorneys for Plaintiffs
                    CURTIS J. JACKSON, III AND NYC VIBE, LLC