LOEB & LOEB LLP
John M. Gatti (SBN 138492)
jgatti@loeb.com
Lauren J. Fried (SBN 309005)
lfried@loeb.com
Tyler D. Downing (SBN 339537)
tdowning@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

*Attorneys for Defendants*
RYAN KAVANAUGH, SKILL HOUSE
MOVIE LLC and GENTV  LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS J. JACKSON, III and NYC VIBE, LLC,<br><br>          Plaintiffs,<br><br>     vs.<br><br>RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC, and GENTV LLC,<br><br>          Defendants. | Case No.: 2:25-cv-3623-HDV-RAO<br><br>Assigned to Hon. Hernan D. Vera<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLAIMS ASSERTED IN COMPLAINT**<br><br>DATE:      August 7, 2025<br>TIME:      10:00 a.m.<br>PLACE:    First Street Courthouse<br>              350 W. 1st Street<br>              Courtroom 5B, 5th Floor<br>              Los Angeles, CA 90012<br><br>Complaint Filed:      April 24, 2025<br><br>*[Filed Concurrently with (1) Declaration of Lauren J. Fried; (2) [Proposed] Order]* |

- 1 -

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 7, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5B of the above-entitled Court, located at the First Street Courthouse, 350 W. 1st  Street, Los Angeles, California 90012, Defendants Ryan Kavanaugh ("Kavanaugh"), Skill House Movie LLC ("Skill House Movie"), and GenTV LLC ("GenTV"), will and hereby do move the Court, pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rule of Civil Procedure, for an Order dismissing the claims asserted against them in the Complaint filed by Plaintiffs Curtis J. Jackson, III ("Jackson") and NYC Vibe, LLC (collectively, "Plaintiffs"), on the following grounds:

1.    The Complaint should be dismissed in its entirety as to Kavanaugh because Plaintiffs have engaged in impermissible shotgun pleading, and so have failed to satisfy Rule 8;

2.    The Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) as to Kavanaugh because Plaintiffs fail to plead any facts, let alone facts alleging plausible entitlement to relief on any claim, as to him;

3.    Plaintiffs' Second Cause of Action for False Advertising and Unfair Competition, 15 U.S.C. § 1125(a); Third Cause of Action for Violation of Common Law Right of Publicity; Fourth Cause of Action for Violation of Statutory Right of Publicity, California Civil Code § 3344; Fifth Cause of Action for Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; Sixth Cause of Action for False Advertising, Cal. Bus. & Prof. Code § 17500; and Eighth Cause of Action for Unfair Competition, California Common Law; should be dismissed as to all Defendants because Jackson failed to plead such claims, all of which are grounded in or sound in fraud, with the specificity required by Rule 9(b);

4.    The Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) because Plaintiffs cannot establish one or more necessary elements of their causes of action and thus fail to state a claim upon which relief may be granted;

5.    The First Amendment bars Plaintiffs' Lanham Act claims; and

6.    Plaintiffs' Third Cause of Action for Violation of Common Law Right of Publicity

and Fourth Cause of Action for Violation of Statutory Right of Publicity, California Civil Code § 3344, should be dismissed as time-barred under the applicable two-year statute of limitations.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities and [Proposed] Order submitted herewith; any additional pleadings that Defendants may file, and any additional authorities and arguments on which Defendants may rely in support of this Motion; the pleadings, papers and other records on file in this action, and on such additional evidence, argument, or other matters that may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel required pursuant to Local Rule 7-3 of the U.S. District Court of the Central District of California, which took place via telephone on June 25, 2025.

Respectfully submitted,

Dated:    June 30, 2025                    LOEB & LOEB LLP

By:   /s/ Lauren J. Fried
Lauren J. Fried
*Attorneys for Defendants*
RYAN KAVANAUGH, SKILL HOUSE MOVIE
LLC and GENTV LLC

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ................................................................................................ 9

II. PERTINENT FACTUAL ALLEGATIONS ...................................................... 9

III. LEGAL STANDARD ...................................................................................... 13

IV. ARGUMENT .................................................................................................... 13

    A. Plaintiffs Fail to State Any Claim Against Kavanaugh .......................... 13

    B. Plaintiffs' Fraud-Based Claims Fail for Lack of Particularity .............. 15

    C. Plaintiffs Fail To Plausibly Allege Elements of Their Claims .............. 19

        1. The Agreement Forecloses Any Claim of Unauthorized Use ................ 19

        2. Plaintiffs Do Not Plausibly Allege Likelihood of Confusion ................ 20

    D. The First Amendment Bars Plaintiffs' Trademark-Based Claims ........ 21

    E. Plaintiffs' Right of Publicity Claims Are Time-Barred ........................ 23

V. CONCLUSION ................................................................................................ 23

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 13

5

6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................... 13

7

8

*Blair v. Nev. Landing P'ship,*
    589 N.E.2d 1188 (Ill. App. Ct. 2006) ............................................... 23

9

*Bosley Med. Inst., Inc. v. Kremer,*
    403 F.3d 672 (9th Cir. 2005) ............................................................. 20

10

11

*Brown v. Elec. Arts,*
    724 F.3d 1235 (9th Cir. 2013) ........................................................... 22

12

13

*Christoff v. v. Nestle USA, Inc.,*
    47 Cal. 4th 468 (2009) ....................................................................... 23

14

*Daly v. Viacom, Inc.,*
    238 F. Supp. 2d 1118 (N.D. 2002) .................................................... 18

15

16

*Destfino v. Reiswig,*
    630 F.3d 952 (9th Cir. 2011) ............................................................. 14

17

18

*Dickinson v. Ryan Seacrest Enters.,*
    2019 U.S. Dist. LEXIS 150174 (C.D. Cal. Mar. 26, 2019) ......... 22, 23

19

*Drennan v. Star Paving Co.,*
    51 Cal. 2d 409 (1958) ........................................................................ 20

20

21

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
    547 F.3d 1095 (9th Cir. 2008) ....................................................... 21, 22

22

23

*In re Finjan Holdings, Inc. Sec. Litig.,*
    58 F.4th 1048 (9th Cir. 2023) ............................................................ 13

24

*Flores v. EMC Mortg. Co.,*
    997 F. Supp. 2d 1088 (E.D. Cal. 2014) ............................................. 14

25

26

*Gerritsen v. Warner Bros. Entm't,*
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................. 15

27

28

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

*Gonzalez v. Oplaai LLC*,
    2023 U.S. Dist. LEXIS 228689 (C.D. Cal. Dec. 19, 2023) .......................................... 20

*Growth All. Grp. LLC v. Christmas Square Grp. LLC*,
    2025 U.S. Dist. LEXIS 112439 (N.D. Cal. June 12, 2025) ........................................ 15

*Hilleary v. Garvin*,
    193 Cal. App. 3d 322 (1987) .......................................................................................... 19

*Janda v. T-Mobile, USA, Inc.*,
    No. C 05-03729 JSW, 2009 U.S. Dist. LEXIS 24395 (C.D. Cal. Mar. 13, 2009) ............... 18

*Jerome's Furniture Warehouse v. Ashley Furniture Indus.*,
    2021 U.S. Dist. LEXIS 8502 (S.D. Cal. Jan. 15, 2021) ............................................... 16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...................................................................................... 13

*Kimber v. Del Toro*,
    2024 U.S. Dist. LEXIS 7905 (S.D. Cal. Jan. 16, 2024) .............................................. 14

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...................................................................................... 10

*Long v. Authentic Athletix LLC*,
    No. 16-cv-03129-JSC, 2017 U.S. Dist. LEXIS 208604 (N.D. Cal. Dec. 19, 2017) .............. 19

*McConnon v. The Kroger Co.*,
    2024 U.S. Dist. LEXIS 1110016 (C.D. Cal. June 21, 2024) ....................................... 18

*McHenry v. Renne*,
    84 F.3d (9th Cir. 1996) ................................................................................................... 14

*McLaughlin v. Homelight, Inc.*,
    2021 U.S. Dist. Lexis 177657 (C.D. Cal. Sept. 17, 2021) ................................... 16, 18

*Merced Cnty. Sheriff's Employees' Ass'n v. Cnty. of Merced*,
    188 Cal. App. 3d 662 (1987) .......................................................................................... 19

*Mossack Fonseca & Co., S.A. v. Netflix Inc.*,
    2020 U.S. Dist. LEXIS 250102 (C.D. Cal. Dec. 23, 2020) .................................... 21, 22

*NBCUniversal Media, LLC v. Super. Ct.*,
    225 Cal. App. 4th 1222 (2014) ...................................................................................... 23

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ...................................................................................... 18

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

*Planet Coffee Roasters, Inc. v. Hung Dam*,
   2009 U.S. Dist. LEXIS 70775 (C.D. Cal. Aug. 12, 2009) ....................................16

*Rogers v. Grimaldi*,
   875 F.2d 944 (2d Cir. 1989) ................................................................21, 22, 23

*Roxbury Entm't v. Penthouse Media Grp., Inc.*,
   669 F. Supp. 2d 1170 (C.D. Cal. 2009)...............................................................22

*Sanders v. Brown*,
   504 F.3d 903 (9th Cir. 2007)...............................................................................21

*Sapelkin v. Selene Fin. LP*,
   2021 U.S. Dist. LEXIS 178934 (S.D. Cal. Sept. 20, 2021)..................................15

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016)...............................................................................20

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010)...............................................................................20

*Seto v. Szeto*,
   86 Cal. App. 5th 76 (2022)...................................................................................20

*Shorter v. State*,
   2024 Dist. LEXIS 199252 (C.D. Cal. Sept. 23, 2024) ........................................15

*Sollberger v. Wachovia Sec., LLC*,
   2010 U.S. Dist. LEXIS 66233 (C.D. Cal. June 30, 2010)....................................14

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)...............................................................................13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)...............................................................................17

*Terpin v. AT&T Mobility LLC*,
   118 F.4th 1102 (9th Cir. 2024).............................................................................17

*Tortilla Factory, LLC v. Health-Ade LLC*,
   2018 U.S. Dist. LEXIS 157538 (C.D. Cal. July 13, 2018)...................................17

*Tubb v. Paramount Pictures Corp.*,
   2024 U.S. Dist. LEXIS 114759 (C.D. Cal. June 28, 2024)..................................22

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................13, 16

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

*Walter v. Mattel, Inc.*,
    210 F.3d 1108 (9th Cir. 2000) ...................................................................................21

**Constitutions**

"U.S. Const. amend. I" ..........................................................................................9, 21, 22

**Statutes**

15 U.S.C. §§ 1051 et seq. ................................................................................16, 21, 22, 23

15 U.S.C. § 1114 ......................................................................................................12, 21

15 U.S.C. § 1125(a) .................................................................................................12, 21

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..........................................................................12

Cal. Bus. & Prof. Code § 17500 ......................................................................................12

Cal. Civ. Code § 3344 ...................................................................................................12

**Court Rules**

Fed. R. Civ. Proc. § 8 ....................................................................................9, 13, 14, 15

Fed. R. Civ. Proc. § 8(a)(2) .............................................................................................13

Fed. R. Civ. Proc. § 9 ....................................................................................................16

Fed. R. Civ. Proc. § 9(b) ..........................................................................................*passim*

Fed. R. Civ. Proc. § 12(b)(6) .........................................................................9, 13, 14, 15

- 8 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' Complaint is the consummate example of what Court's warn against in drafting pleadings.  While there are three distinct defendants named in this action: Ryan Kavanaugh, Skill House Movie, LLC and GenTV LLC, one would be forgiven for believing there was only a single entity named "Defendants".  The Complaint makes no attempt to differentiate between the Defendants and as a result, no defendant is "on notice" as to the allegations against him or it.  Specifically, the Complaint fails to state factual allegations against Mr. Kavanaugh.  Instead, Plaintiffs' rely on lumping Mr. Kavanaugh in with the corporate entities.  Federal Rules of Civil Procedure 8 and 12(b)(6) expressly prohibit such an action.

The failure in pleading does not end there.  While Plaintiffs' Second, Third, Fourth, Fifth, Sixth and Eight causes of action sound in fraud, Plaintiffs fail to meet the heightened pleading requirement detailed in Federal Rule of Civil Procedure 9(b).  As a result, the Complaint fails as a matter of law.

Furthermore, while Plaintiffs attempt to plead a cause of action for trademark violations, they neglect to recognize the primacy of the First Amendment in such actions.  Finally, Plaintiffs' right of publicity claims are time-barred based on their own allegations in the Complaint.

Individually, each of these deficiencies is grounds to dismiss the Complaint.  However, taken together, they illustrate a failure to comply with the Federal Rules of Civil Procedure and therefore the Complaint should be dismissed.

### II.    PERTINENT FACTUAL ALLEGATIONS

Jackson is a rapper professionally known as "50 Cent."  Compl. ¶ 14.  He is also an actor and producer with credits spanning a number of television shows, films and documentaries.  *Id.* ¶¶ 21-22.  In 2024, Jackson launched a streaming channel with Lionsgate called "50 Cent Action," which features action-genre properties curated by Jackson from Lionsgate's film library.  *Id.* ¶ 23.  The

trademark "50 CENT" is owned by Jackson "through NYC Vibe" and Plaintiffs allege Jackson also has "common law rights" in the mark. *Id.* ¶ 24.

Kavanaugh is a prolific film and television financier and producer well-known in the entertainment industry. *See id.* ¶¶ 16, 30. Plaintiffs allege "on information and belief" that Skill House Movie is a producer of the Film. *Id.* ¶ 17. Plaintiffs also allege that GenTV is a "streaming platform." *See e.g.*, *id.* ¶¶ 1, 6, 36. But elsewhere, Plaintiffs acknowledge GenTV is actually the production company for the Film. *See id.* ¶ 18.[1] The various press releases and websites related to GenTV incorporated in Plaintiffs' complaint contradict their manufactured narrative that the Film will be distributed on any supposed GenTV "streaming platform." For example, the press release cited by Plaintiffs makes clear that GenTV's films "will be uniquely distributed through two distinct platforms: short-form episodic films released on social media" and "traditional full-length features available in theaters and all subsequent release windows." *See* Compl. ¶ 44 n.7; *see also id.* ¶ 38 n.5 (deadline article discussing *theatrical* release); ¶ 43 n.6 (stating GenTV aims to sell "episodes" but that films, including Skill House are to be released in ***theaters***). Plaintiffs vaguely allege, again on unsourced "information and belief," that Kavanaugh "directly or indirectly owns and/or controls Skill House Movie and GenTV." *Id.* ¶ 16. The Complaint is otherwise silent on Kavanaugh's relation to, or supposed control over, either Skill House Movie or GenTV.

In 2022, Jackson, through his loan-out company G-Unit Film & Television, Inc. ("G Unit"), negotiated a binding term sheet with Defendants, pursuant to which Jackson would act in, produce, and market the Film.[2] *Id.* ¶¶ 27-28. Among other things, the term sheet and its attached Employment Certificate (collectively, the "Agreement") authorizes the use of Jackson's name and likeness in connection with marketing and publicity for the Film, requires Jackson to be credited along with other actors and producers as "Curtis '50 Cent' Jackson," contemplates Jackson's participation in sequels

---

[1] In his declaration submitted in support of Plaintiffs' (baseless) motion for preliminary injunction, Jackson's outside counsel, Stephen J. Savva, states that GenTV "serves as the production company for the *Skill House* film." Dkt. 22-3, at ¶ 10.

[2] In ruling on a motion to dismiss, the Court may consider documents referenced in but not physically attached to the complaint, where the documents' authenticity is not contented and the complaint necessarily relies on them. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

and remakes of the Film, and arranges for product placement of Jackon's liquor brands, including Le Chemin du Roi Champagne.  Dkt. 27-4 (Declaration of Neil Sacker filed in Support of Defendants' Motion to Compel Arbitration) Ex. 10, p. 94-103 at ¶¶ 6, 7, 8, 9.  The Agreement does not give Jackson creative control or final approval rights over the Film.  Rather, the Certificate of Employment, provides that Jackson's creative contributions were "works made for hire" and that Skill House Movie was the "sole and exclusive owner" of the "Material," as defined therein.  *Id.* ¶ 5 & Ex. A.  The Agreement places no limitations on how or where the film could be released, streamer or otherwise.  In fact, it expressly ***contemplates*** the possibility that the Film might be distributed "by a Major Streaming Service (e.g., Netflix, Hilu, HBO Max, Amazon Prime and Apple).  *Id.* at ¶ 5 (a).

Although Plaintiffs now disclaim the existence of this binding Agreement, Jackson—who claims to be "very selective" about his acting and producing projects—agreed to, and did, film scenes to be used in the Film.  Compl. ¶¶ 26, 30.  As reported in the Vibe, Entertainment Weekly, and Variety articles cited in Plaintiffs' Complaint (*id.* ¶ 38 n.5), Jackson also promoted the Film and his involvement in it to his social media accounts.  According to Vibe, "Curtis Jackson excitedly posted about Ryan Kavanaugh and his eagerness to join the horror movie … 'In partnership with Emmy, Grammy, Oscar, and Tony-nominated mega-producer Ryan Kavanaugh,' 50 Cent posted on Instagram … 'I'm working; let's work….'"  Dkt. 26-3 (Declaration of Lauren J. Fried iso Opposition to Preliminary Injunction) Ex. 1.  Entertainment Weekly reported that Jackson "broke the news himself" about a cameraman passing out during filming of the Film, saying "[t]his s--- is gonna be crazy."  *Id.* Ex. 2.  Variety likewise quoted a now-deleted Instagram post by Jackson,[3] in which he touted his involvement in and "had many praises to share about the upcoming horror pic: '**We're** elevating horror to the next level.  This is gonna change the rules of the game,' he remarked."  *Id.* (emphasis added).

Plaintiffs nonetheless allege that "Defendants" have promoted the Film using Jackson's name, image, voice, trademarks and champagne "without authorization," and that Jackson has had "no

---

[3] That some of Jackson's posts have since been deleted—as evident from the articles Jackson incorporates in his Complaint—raises serious spoliation concerns.

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

creative control over or input into the movie." Compl. ¶¶ 34-40. Again mischaracterizing the production company, Plaintiffs further allege that "Defendants" are using Jackson's intellectual property "to promote their nascent streaming platform GenTV." *Id.* ¶ 41. And despite the various articles incorporated in Jackson's Complaint making clear the Film will be released in theaters, Plaintiffs somehow still speculate that, by promoting the Film through GenTV's website and social media, "Defendants" still plan to release it on GenTV. *Id.* ¶ 45. According to Plaintiffs, GenTV "as a startup streaming platform," directly competes with 50 Cent Action, but that Jackson "never would have agreed to … compete with himself." *Id.* ¶ 46.[4] Defendants do not explain how GenTV's supposed streaming platform competes with Jackson's streaming channel (which only plays films that are part of a different production company's library) and is itself available on other streaming platforms, like Roku. *Id.* ¶ 23.

Plaintiffs assert eight causes of action against "Defendants" collectively, all predicated upon the purported use of Jackson's intellectual property without authorization in connection with the Film: (1) Trademark Infringement, 15 U.S.C. § 1114; (2) False Advertising and Unfair Competition, 15 U.S.C. § 1125(a); (3) Violation of Common Law Right of Publicity; (4) Violation of Statutory Right of Publicity, California Civil Code § 3344; (5) Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (6) False Advertising, Cal. Bus. & Prof. Code § 17500; (7) Trademark Infringement, California Common Law; and (8) Unfair Competition, California Common Law. Even disregarding that all of Plaintiffs' claims directly implicate the parties' binding Agreement (which requires arbitration, *see* Dkt. 27), Plaintiffs' claims are fatally deficient: Plaintiffs do not specifically allege Kavanaugh's involvement in any alleged unauthorized use of Jackson's intellectual property, and, although the majority of their claims sound in fraud, Plaintiffs fail to satisfy the required heightened pleading standard. Plaintiffs' claims should be dismissed.

---

[4] Of course, as Plaintiffs contradictorily allege, Jackson's other projects are available on streaming platforms that ostensibly "compete" with 50 Cent Action, including *Power* on Starz and Hulu, *Black Mafia Family* on Starz and Hulu, and *For Life* on ABC. Compl. ¶ 20. *Southpaw*, *Expend4bles* and *Den of Thieves* (*id.* ¶ 21) are also available on numerous streaming competing platforms, including Starz, AppleTV and Amazon Prime Video, among others.

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted."  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court need not accept, and may disregard, unreasonable inferences, conclusory allegations, and legal conclusions. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "When a general conclusion in a complaint contradicts specific facts retold in a document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, those specific facts are controlling." *In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023).

A complaint must be evaluated in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. *Twombly*, 550 U.S. at 555 n.3.  Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Where fraud is alleged, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to plead the circumstances constituting fraud with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  A claim that is "grounded in fraud" or that "sounds in fraud" likewise must be pleaded with particularity, even when fraud is not an essential element of the claim. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).  To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must plead the "'who, what, when, where, and how' of the misconduct charged" as to each defendant. *Id.* (citation omitted).

### IV.    ARGUMENT

#### A.    Plaintiffs Fail to State Any Claim Against Kavanaugh.

The Complaint does not contain a single factual allegation that Kavanaugh, specifically, used Jackson's intellectual property or made any misrepresentations. Plaintiffs instead rely on impermissible shotgun pleading, invoking the omnibus term "Defendants" in connection with the alleged misconduct on which their claims are predicated. This is insufficient to state any cause of action against Kavanaugh under both Federal Rules of Civil Procedure 8 and 12(b)(6), and Plaintiffs' claims should be dismissed.

The purpose of Rule 8 is to provide a defendant with fair notice of the wrongs he allegedly committed. *See Kimber v. Del Toro*, 2024 U.S. Dist. LEXIS 7905, at *5 (S.D. Cal. Jan. 16, 2024); *see also McHenry v. Renne*, 84 F.3d at 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written more as a press release … without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."). It is thus well established that "[a] plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy" Rule 8. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (internal quotation mark and citation omitted). By contrast, "[s]hotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, 2010 U.S. Dist. LEXIS 66233, at *11 (C.D. Cal. June 30, 2010). A shotgun pleading indiscriminately alleging "everyone did everything"—like Plaintiffs' Complaint here—violates Rule 8. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of complaint using shotgun pleading under Rule 8).

The Complaint's allegations of purported misconduct impermissibly lump Kavanaugh together with Skill House Media and GenTV. It does not even begin to attempt to differentiate between the three defendants. The Complaint fails to allege with adequate specificity what Kavanaugh is claimed to have done with respect to the purported unauthorized use of Plaintiffs' intellectual property or representations at issue; fails to allege how Kavanaugh supposedly violated Plaintiffs' legal rights; and fails to explain which allegations of misconduct are relevant to him. The Complaint plainly prevents Kavanaugh from knowing exactly what he is accused of doing (or not

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

doing), and clearly makes it "difficult," if not "impossible," for Kavanaugh to make an "informed response" to Plaintiffs' claims. *Shorter v. State*, 2024 Dist. LEXIS 199252, at *22-27 (C.D. Cal. Sept. 23, 2024) (dismissal under Rule 8 warranted where use of term "Defendants" made it "difficult to discern … which allegations form the basis of any cause of action against any given Defendant"). Plaintiffs' pleading thus fails to satisfy Rule 8.

Indeed, specific references to Kavanaugh in the Complaint can be counted on one hand. The Complaint alleges Kavanaugh : (1) discussed the Agreement with Jackson (Compl. ¶¶ 2, 27-31); (2) facilitated a correction to a news article (*id.* ¶¶ 47-50)[5]; and (3) as, "on information and belief," "directly or indirectly" owns and/or controls Skill House Movie and GenTV (*id.* ¶ 16). The first and second allegations do not underlie any cause of action, *see id.* ¶¶ 56-110, and in fact contradict Plaintiffs' unauthorized use and intentional misrepresentation contentions. The third is impermissibly conclusory. Plaintiffs do not allege any facts that could support piercing the corporate veil or alter ego liability, and its barebones alleges of possible ownership and control do not support any element of any asserted claim. *See, e.g.*, *Growth All. Grp. LLC v. Christmas Square Grp. LLC*, 2025 U.S. Dist. LEXIS 112439, at *6-7 (N.D. Cal. June 12, 2025) (dismissing claim against individual where complaint "contain[ed] no more than conclusory allegations that a unity of interest" existed with LLC); *Sapelkin v. Selene Fin. LP*, 2021 U.S. Dist. LEXIS 178934, at *8-9 (S.D. Cal. Sept. 20, 2021) (dismissing claims against individuals where plaintiff only conclusory alleged they exerted control over LP). Plaintiffs thus have also failed to allege facts sufficient to state a claim against Kavanaugh under Rule 12(b)(6). *See Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.").

### B. Plaintiffs' Fraud-Based Claims Fail for Lack of Particularity.

Plaintiffs' second, third, fourth, fifth, sixth and eighth causes of action also fail because all sound in fraud, yet none meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).

---

[5] Numerous references to Kavanaugh in the Complaint are merely in the titles of news articles which, as the bylines establish, were authored by third parties. *E.g.*, Compl. ¶¶ 38 n.5 & 50 n.8.

It is well established that "Lanham Act false advertising claims"—like Plaintiffs' second cause of action—"are subject to the heightened pleading standard of Rule 9(b)." *McLaughlin v. Homelight, Inc.*, 2021 U.S. Dist. Lexis 177657, at *9 (C.D. Cal. Sept. 17, 2021) (citing cases). Plaintiffs' fifth and sixth causes of action, for claimed violations of California's UCL and FAL, respectively, are likewise predicated upon allegations of "fraudulent" and "intentional[]" false advertising, Compl. ¶¶ 84-86, 90-92, and thus are subject to Rule 9(b). *See Jerome's Furniture Warehouse v. Ashley Furniture Indus.,* 2021 U.S. Dist. LEXIS 8502, at *5 (S.D. Cal. Jan. 15, 2021) ("[T]he Ninth Circuit has held that Rule 9(b) applies to state-law causes of action, including the UCL and FAL."). The same is true of Plaintiffs' eighth cause of action for common law unfair competition, premised upon Defendants' alleged "knowing[]" and "willful[]" misappropriation of Jackson's name, image and other intellectual property for "false[]" marketing. Compl. ¶¶ 104-108 (also alleging consumers are likely to be confused and deceived); *see Planet Coffee Roasters, Inc. v. Hung Dam*, 2009 U.S. Dist. LEXIS 70775, at *12 (C.D. Cal. Aug. 12, 2009) (common law unfair competition claim grounded in allegations that defendants' actions were willful and intended to cause confusion, mistake or deception was subject to Rule 9(b)). Plaintiffs' third and fourth causes of action, for claimed violations of common law and statutory rights of publicity, are also grounded in fraud and so are subject to the particularity requirement of Rule 9(b). Compl. ¶¶ 74, 80 (alleging Defendants' "misconduct was … fraudulent"); *see Vess*, 317 F.3d at 1103-04 (stating that where plaintiff chooses to allege that defendant engaged in fraudulent conduct, the claim must satisfy Rule 9(b)).[6]

Plaintiffs' fraud-based claims fail to satisfy Rule 9's heightened pleading standard. The Complaint is wholly devoid of any details of Kavanaugh's alleged role or purported involvement in any claimed misrepresentations or unauthorized use of Jackson's intellectual property or publicity rights. They do not specify, for example, what allegedly false statements were made by Kavanaugh,

---

[6] The Complaint's counts are all underlined by the same unified course of conduct; namely, Defendants' alleged use of Jackson's name, image, and other intellectual property to falsely and/or fraudulently deceive or mislead consumers as to Jackon's affiliation with the Film and GenTV. Compl. ¶¶ 56-110. Each of the claims further "reallege[s] and incorporate[s] by reference" all allegations in the preceding paragraphs of the Complaint. *Id.* ¶¶ 56, 64, 71, 77, 83, 89, 95, 103.

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

when those statements were made, where they were made, or to whom.  This alone warrants dismissal of Plaintiffs' fraud-based claims.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" (citation omitted)).

At most, Plaintiffs cite to a handful of news articles that mention Kavanaugh, but those articles were prepared by independent journalists.  Compl. ¶ 38 n.5.  Although Plaintiffs attempt to characterize this press coverage as "Defendants' marketing efforts," these scant allegations—even if they were not expressly contradicted by the articles' bylines—are made on "information and belief." *Id.* ¶¶ 38, 42.  This, too, fails to satisfy Rule 9(b).  *See Tortilla Factory, LLC v. Health-Ade LLC*, 2018 U.S. Dist. LEXIS 157538, at *23 (C.D. Cal. July 13, 2018) ("[A]llegations of fraud upon information and information and belief typically do not satisfy Rule 9(b)'s heightened pleading standard.").

Plaintiffs also make no effort to connect Kavanaugh to the Film clip and trailer on GenTV's website or to the Skill House Movie Instagram page.  None of these allegations specifically mention Kavanaugh.  Compl. ¶¶ 36-37, 39, 45, 51.  Plaintiffs only vaguely allege "on information and belief" that Kavanaugh "directly or indirectly owns and/or controls Skill House Movie and GenTV." *Id.* ¶ 16. As discussed above, that conclusory allegation is not enough.  Plaintiffs do not allege Kavanaugh had any supposed authority to speak for the other defendants, and they do not articulate what relevant actions Kavanaugh allegedly took with respect to the clip, trailer, or social media post.  Plaintiffs' anemic allegations thus fall far short of Rule 9(b)'s particularity requirement.  *See Terpin v. AT&T Mobility LLC,* 118 F.4th 1102, 1112 (9th Cir. 2024) (affirming dismissal of fraudulent misrepresentation claim where plaintiff failed to identify which company representatives made any misrepresentations and their authority to speak on the company's behalf); *Tortilla Factory*, 2018 U.S. Dist. LEXIS 157538, at *35-36 (Rule 9(b) requires a plaintiff "'to inform each defendant separately of the allegations surrounding [his] alleged participation in the fraud'" (quoting *Swartz*, 476 F.3d at

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

764-65)).

Equally deficient are Plaintiffs' scant allegations that any statements by any Defendant are false or misleading. Rule 9(b) requires a plaintiff asserting a claim for false advertising or that sounds in fraud to plead, among other things, "'what is false or misleading about the [purportedly fraudulent] statement, and why it is false.'" *McLaughlin*, 2021 U.S. Dist. LEXIS 177657, at *9 (citation omitted) (alteration in original); *accord McConnon v. The Kroger Co.*, 2024 U.S. Dist. LEXIS 1110016, at *5 (C.D. Cal. June 21, 2024) (dismissing UCL and FAL claims). Plaintiffs have not satisfied, and cannot satisfy, this requirement.

As Plaintiffs concede, Jackson agreed to, and did, film scenes to be used in the Film. Compl. ¶ 30. Contrary to Plaintiffs' allegations, and as explained below, Jackson also agreed to Defendants' use of his name, image, voice and intellectual property in and for marketing of the Film—the parties' Agreement in fact requires certain such uses.[7] Jackson himself also promoted the Film and his involvement in it on his social media platforms. *See id.* ¶ 38 n.5; Dkt. 26-3, Exs. 1-12. Any statements by Defendants regarding, or the use of, Jackson's name, image, voice or intellectual property in the Film or to market it—especially in clips and trailers depicting scenes Jackson admittedly filmed. They do not falsely or misleadingly associate Jackson with the Film or its production company's website (particularly where the agreement *requires* Jackson to be prominently credited). *See Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2009 U.S. Dist. LEXIS 24395, at *19-30 (C.D. Cal. Mar. 13, 2009) (dismissing false advertising and UCL claims where parties' agreement disclosed and permitted defendant to charge the additional fees underlying plaintiff's claims); *cf. Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123-24 (N.D. 2002) (plaintiff's appearance in television program eliminated possibility of confusion about nature of the program). Plaintiffs' second, third, fourth, fifth, sixth and eighth causes of action fail to satisfy Rule 9(b)'s heightened pleading standard, and should be dismissed.

---

[7] Courts "are not … required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint[.]" *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

**C.      Plaintiffs Fail To Plausibly Allege Elements of Their Claims.**

**1.      The Agreement Forecloses Any Claim of Unauthorized Use.**

Plaintiffs' assertion that the parties "never reached a final agreement" regarding Jackson's involvement in the Film is belied by their concession that he filmed scenes for and promoted the Film on his social media.  Under principles of California contract law, there is no doubt that the parties entered into the valid and enforceable Agreement, under which Jackson not only authorized, but **required**, Defendants' use of the very intellectual property about which he now complains.  This dooms Plaintiffs' claims.

Even if Jackson did not sign the Agreement (which Defendants dispute), he manifested his assent to its material terms.  Courts apply an objective standard to determine whether parties have mutually assented to an agreement: "[t]he test is whether a reasonable person would, from the conduct of the parties, conclude that there was mutual agreement." *Hilleary v. Garvin*, 193 Cal. App. 3d 322, 327 (1987).  "Acceptance of an offer may be manifested by conduct as well as by words" and "may be implied through action or inaction." *Long v. Authentic Athletix LLC*, No. 16-cv-03129-JSC, 2017 U.S. Dist. LEXIS 208604, at *8 (N.D. Cal. Dec. 19, 2017); *see also Merced Cnty. Sheriff's Employees' Ass'n v. Cnty. of Merced*, 188 Cal. App. 3d 662, 670 (1987) ("The manifestation of assent to a contractual provision may be 'wholly or partly by written or spoken words or by other acts or by failure to act.'" (citation omitted)).

Plaintiffs admit that, after negotiating the Agreement, Jackson filmed scenes to be used in the Film.  Compl. ¶¶ 28, 30.  The articles cited in the Complaint demonstrate that Jackson promoted the Film and his involvement in it through his social media accounts.  *Id.* ¶ 38 n.5; Dkt. 26-3, Exs. 1-12.  That Jackson—who proclaims to "maintain[] … careful control over all his business ventures" and is "very selective" about his acting and producing opportunities (*id.* ¶ 26)—did so without the negotiated Agreement strains credulity.  Indeed, although the Complaint confirms that marketing for the Film (including by Jackson himself) began as early as 2022, Plaintiffs do not allege to have had any issue with Jackson's affiliation with the Film **for years**; namely, not until around the time Jackson launched "50 Cent Action" in 2024.  *Compare* Compl. ¶ 38 n.5 (citing 2022 articles), *with id.* ¶¶ 23,

47.  Jackson's assent to the Agreement is readily inferable from these allegations.  *See Gonzalez v. Oplaai LLC*, 2023 U.S. Dist. LEXIS 228689, at *7 (C.D. Cal. Dec. 19, 2023) (conduct from which intent to be bound can include performance or other indicia of ratification or implied acceptance); *Seto v. Szeto*, 86 Cal. App. 5th 76, 90 (2022) (subsequent conduct is "most reliable" means of determining parties' intent).[8]

The Agreement's material terms, among other things, **<u>authorize</u>** the use of Jackson's name and likeness in connection with marketing and publicity for the Film, **<u>require</u>** Jackson to be credited along with other actors and producers as "Curtis '50 Cent' Jackson," and **<u>demand</u>** product placement of Jackon's liquor brands.  Dkt. 27-4, Ex. 10 pp. 94-101, at ¶¶ 6, 7, 8, 9.  Moreover, even if GenTV were a streaming service in competition with Jackson's "50 Cent Action," as Plaintiffs erroneously allege (it is not), the Agreement places no limits on how the Film may be distributed.  *See generally id.*  As Defendants' purported unauthorized use of Plaintiffs' intellectual property and publicity rights in connection with the Film is the predicate for—and is an essential element of—Plaintiffs' claims, Jackson's permission is fatal to all.  *E.g.*, Compl. ¶¶ 58, 65, 72, 78, 84, 91, 97, 104.  *See Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (lack of consent is element of right of publicity claim); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (trademark law prevents "only unauthorized uses"); *see also* Dkt. 22 at 15-17 (Jackson explaining his other claims rise and fall with his trademark and right of publicity claims).

### 2.    Plaintiffs Do Not Plausibly Allege Likelihood of Confusion.

Plaintiffs' self-contradictory allegations likewise doom their contention that there is a

---

[8] Even if the Agreement did not constitute a binding contract—and it does—after three years of acting in accordance with the promises in the Agreement, equity prevents Jackson from disclaiming its existence now.  As the foregoing allegations demonstrate, Jackson has known, for years, that Defendants were operating under the understanding that Jackson was appearing in the film.  In the wake of this long course of conduct, the doctrines of laches and acquiescence bar Jackson's claims. *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988-90 (9th Cir. 2010) (with respect to acquiescence, "the proper inquiry is whether and to what extent Appellees relied reasonably on Appellants' active representations that Appellees had a right to use the marks" and is similar to laches which focuses on "passive consent").  As does estoppel.  *See Drennan v. Star Paving Co.*, 51 Cal. 2d 409, 413 (1958) (promise that reasonably induces action or forbearance is enforceable).

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

likelihood of confusion stemming from Jackson's appearance in a film on a streaming or production company website.  Notably, Plaintiffs themselves allege that other of Jackson's film and television projects are available on platforms other than, and that ostensibly "compete" with, "50 Cent Action," including Starz and ABC.  Compl. ¶ 20.  (Publicly-available information online demonstrates that Jackson's films *Southpaw*, *Expend4bles* and *Den of Thieves*, *id.* ¶ 21, are also available on streaming platforms, like AppleTV and Amazon Prime Video, that supposedly "compete" with Jackson's.)  Yet Plaintiffs do not allege—nor could they—that reasonable consumers believe actors or producers endorse every streaming service or other platform on which a series or film they are involved with is housed.  Plaintiffs also do not explain how references to the Film on GenTV's website is somehow different than Jackson's appearance in connection with other projects on any other websites of other producers or streamers.  Plaintiffs instead leave the premise to implausible implication, but such "unreasonable inference[]" is "insufficient to defeat a motion to dismiss."  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  Plaintiffs thus have failed to plausibly allege a likelihood of confusion, further necessitating dismissal of their first, second, fifth, sixth, seventh and eighth causes of action.[9]

### D.    The First Amendment Bars Plaintiffs' Trademark-Based Claims.

Plaintiffs' Lanham Act and related state law claims must be dismissed for the additional reason that they are barred by the First Amendment under the test set forth in *Rogers v. Grimaldi*, 875 F.2d 944 (2d Cir. 1989).  *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008) ("[T]he First Amendment defense applies equally to [plaintiff's] state law claims as to its Lanham Act claim[.]").

Under the two-pronged *Rogers* test, an artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable unless the use of the mark has no artistic relevance to the underlying work whatsoever, or, if has some artistic relevance, it is explicitly misleading as to the source or content of the work.  *See Mossack Fonseca & Co., S.A. v. Netflix Inc.*, 2020 U.S. Dist.

---

[9] *See* 15 U.S.C. § 1114 (requiring likelihood of confusion for trademark infringement claim); 15 U.S.C. § 1125(a) (same); *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) ("likelihood of confusion" test applies to California common law and statutory unfair competition claims).

LEXIS 250102, at *2-3 (C.D. Cal. Dec. 23, 2020).  To merit First Amendment protection under the first prong, "the level of relevance merely must be above zero."  *E.S.S. Entm't 2000*, 547 F.3d at 1100.   Under the second prong, "*[i]mplicit* endorsement/sponsorship is insufficient."  *Tubb v. Paramount Pictures Corp.*, 2024 U.S. Dist. LEXIS 114759, at *65 (C.D. Cal. June 28, 2024) (original emphasis); *see also Brown v. Elec. Arts*, 724 F.3d 1235, 1245 (9th Cir. 2013) ("It is key that the creator must *explicitly* mislead consumers.  "'[T]he slight risk that … use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression[.]'" (quoting *Rogers*, 875 F.2d at 999-1000) (original emphasis)).  Both prongs are satisfied here.

As to the first prong, "[i]t is well established that films are entitled to First Amendment protections."  *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1175 (C.D. Cal. 2009).  Moreover, "advertisements that are 'adjunct' to a protected work are entitled to the same immunity … as the underlying work."  *Dickinson v. Ryan Seacrest Enters.*, 2019 U.S. Dist. LEXIS 150174, at *28 (C.D. Cal. Mar. 26, 2019).  Such advertisements include clips from and trailers for a film or television series, which "would be considered non-commercial speech for the purposes of an action under the Lanham Act."  *Id.* (finding both a television series episode and its promotional content, include a clip from the episode, subject to First Amendment protection); *see also Mossack Fonseca*, 2020 U.S. Dist. LEXIS 250102, at *6-7 (finding use of mark in film and film trailer protected under the First Amendment based on the *Rogers* test).

Here, the Film is an artistic expression.  And, as Plaintiffs concede, Jackson agreed to and did film scenes to be used in the Film.  Compl. ¶ 30.  The use of his name, image and intellectual property in the Film and in its concomitant promotional materials—including the clip and trailer available on GenTV's website depicting those scenes—unquestionably have artistic relevance above zero.  *See Tubb*, 2024 U.S. Dist. LEXIS 114759, at *65 (finding use of photograph of plaintiff's likeness in film was unquestionably artistically relevant); *Dickinson*, 2019 U.S. Dist. LEXIS 150174, at *31 (finding "that the inclusion of Plaintiff's likeness, image, and name in the Episode, and concomitant promotional materials, even if included without her consent, bore artistic relevance above zero").

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

1    As to the second prong of the *Rogers* test, Plaintiffs have failed to plausibly allege that the

2    statements at issue are explicitly misleading for the reasons set forth above.  *See Supra*; *see also*

3    *Dickson*, 2019 U.S. Dist. LEXIS 150174, at *33 ("A clip of a television episode could not possibly

4    mislead as to the content of the episode, as it is itself a portion of the content.").  Plaintiffs' Lanham

5    Act and related state-law claims should be dismissed.

6          **E.**      **Plaintiffs' Right of Publicity Claims Are Time-Barred.**

7    Plaintiffs' third and fourth causes of action, for violations of common law and statutory rights

8    of publicity, are subject to a two-year statute of limitations.  *See Christoff v. v. Nestle USA, Inc.*, 47

9    Cal. 4th 468 (2009).  Plaintiffs allege that Defendants have used Jackson's name, image and voice in

10   a marketing campaign which has a singular purpose: to promote the Film's "release," including

11   (purportedly) on GenTV.  Compl. ¶¶ 34, 45, 74, 80.  Courts confronted with similar allegations have

12   held that the statute of limitations begins to run upon the first publication.  *See, e.g.*, *Blair v. Nev.*

13   *Landing P'ship*, 589 N.E.2d 1188, 1193 (Ill. App. Ct. 2006) ("We do not believe that the defendants'

14   act of publishing the plaintiff's picture in various mediums around the casino falls under the

15   continuing violation exception.  Rather, we believe that the use of the plaintiff's picture in different

16   means … constituted a single overt act.  The plaintiff's picture, although it was displayed in various

17   mediums over a period of time, was used for a single purpose, to advertise the  [restaurant], and

18   targeted a single audience, casino patrons."); *cf. NBCUniversal Media, LLC v. Super. Ct.*, 225 Cal.

19   App. 4th 1222, 1237 n.10 (2014) (where plaintiff alleged that defendants exploited ideas for a reality

20   television series, each broadcast of a new episode of the series was part of a single breach of implied

21   contract).  Plaintiffs here allege that Defendants' marketing campaign for the Film, using Jackson's

22   property, began in 2022, Compl. ¶ 38 & n. 5 (citing articles from 2022), more than two years before

23   the Complaint was filed on April 24, 2025.  Plaintiffs' right of publicity claims are thus time-barred.

24   **V.**      **CONCLUSION**

25   For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the

26   Complaint in its entirety.

27

28

1

Dated:    June 30, 2025                    LOEB & LOEB LLP

2

By:   /s/ Lauren J. Fried
3                                          Lauren J. Fried

4                                          Attorneys for Defendants
                                           RYAN KAVANAUGH, SKILL HOUSE MOVIE
5                                          LLC and GENTV LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Ryan Kavanaugh, Skill House Movie LLC, and GenTV LLC, certifies that this brief contains 15 pages (5,823 words), which complies with the word limit of L.R. 11-6.1 and Judge Vera's Civil Standing Order, Rule IX.C..

Dated:    June 30, 2025                          LOEB & LOEB LLP


By:  /s/ Lauren J. Fried
Lauren J. Fried
*Attorneys for Defendants*
RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC and GENTV LLC

NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ASSERTED IN COMPLAINT