BLANK ROME LLP
Jonathan A. Loeb (SBN 162758)
jonathan.loeb@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:    424.239.3400
Facsimile:    424.239.3434

Craig Weiner (admitted *pro hac vice*)
craig.weiner@blankrome.com
Reena Jain (*pro hac vice*)
reena.jain@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.885.5000
Facsimile: 212.885.5001

Attorneys for Plaintiffs
CURTIS J. JACKSON, III AND NYC VIBE, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS J. JACKSON, III and NYC VIBE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC, and GENTV LLC,<br><br>Defendants. | Case No. 2:25-cv-03623-HDV-RAO<br><br>Honorable Hernán D. Vera<br><br>**REDACTED**<br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>*[Filed Concurrently with Declaration of Reena Jain, Esq.]*<br><br>Date:   August 28, 2025<br>Time:   10:00 a.m.<br>Place:  First Street Courthouse<br>          350 W. 1st Street<br>          Courtroom 5B, 5th Floor<br>          Los Angeles, CA 90012 |

---

**NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 28, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Hernán D. Vera, presiding in Courtroom 5B of the above-titled Court, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Plaintiffs Curtis J. Jackson, III ("Jackson") and NYC Vibe, LLC ("NYC Vibe") (collectively, "Plaintiffs") will and hereby do move the Court for an order enforcing the settlement agreement against Defendants Ryan Kavanaugh ("Kavanaugh"), Skill House Movie LLC ("Skill House Movie"), and GenTV LLC ("GenTV") (collectively, "Defendants").

Pursuant to the Court's equitable authority and broad discretion to summarily enforce a settlement agreement in a case pending before it, Plaintiffs ask that the Court enforce the settlement agreement entered into by Plaintiffs and Defendants on May 12, 2025, on the grounds that, on that date, the parties reached an agreement as to all material terms and intended to be bound by those terms. *See J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1 (Cal. Ct. App. 2019); *Fine Design Grp., Inc. v. Balls Mktg. LLC*, No. 20-cv-09450-JST, 2022 WL 20208934 (N.D. Cal. May 11, 2022).

This motion is based on the Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Reena Jain, Esq., the Proposed Order filed concurrently herewith, and all other matters presented to the Court prior to and at the hearing.

This motion is made following the conference of counsel for Plaintiffs and Defendants pursuant to Local Rule 7-3 and Rule IX.A of Judge Vera's Civil Standing Order, which took place on July 9, 2025 by videoconference, and subsequent email correspondence between counsel for Plaintiffs and Defendants. The parties thoroughly discussed the substance and potential resolution of the filed motion.

DATED:  July 28, 2025                         BLANK ROME LLP


                                              By: */s/ Jonathan A. Loeb*
                                              Jonathan A. Loeb
                                              Attorneys for Plaintiffs
                                              CURTIS J. JACKSON, III AND NYC VIBE, LLC

---

**NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND .....................................................................................2

III.  LEGAL STANDARD .................................................................................................4

IV.   ARGUMENT ..............................................................................................................6

     A.    The May 12th Settlement Agreement Is a Complete Agreement with All Material Terms Set Forth Therein ...............................................................................6

     B.    Defendants Manifested an Objective Intent to Be Bound to the May 12th Settlement Agreement .................................................................................................9

     C.    Defendants' Material Breach of the May 12th Settlement Agreement Forced Plaintiffs to Move for a Preliminary Injunction ...........................................9

V.    CONCLUSION .........................................................................................................11

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bill Poon & Co. Architects, Inc. v. Bafaiz*,
  C 07-5566 PJH, 2009 WL 688917 (N.D. Cal. Mar. 16, 2009) ................................................6

*Brown v. Nationscredit Com.*,
  No. 3:99-cv-592 (EBB), 2000 WL 888507 (D. Conn. June 23, 2000) ....................................8

*Callie v. Near*,
  829 F.2d 888 (9th Cir. 1987) ..........................................................................................4, 5

*Cates v. Morgan Portable Bldg. Corp.*,
  780 F.2d 683 (7th Cir. 1985) ................................................................................................2

*De Burgh v. De Burgh*,
  250 P.2d 598 (Cal. 1952) ................................................................................................9, 10

*Fine Design Grp., Inc. v. Balls Mktg. LLC*,
  No. 20-cv-09450-JST, 2022 WL 20208934 (N.D. Cal. May 11, 2022) ..........................5, 7, 8

*Forcelli v. Gelco Corp.*,
  972 N.Y.S.2d 570 (2nd Dep't 2013) .....................................................................................5

*Harris v. Rudin, Richman & Appel*,
  74 Cal. App. 4th 299 (Cal. Ct. App. 1999) ...........................................................................8

*Hess v. Hanneman*,
  No. 14-cv-2271-CAB-JMA, 2017 WL 6027015 (S.D. Cal. Dec. 4, 2017) .............................5

*Inamed Corp. v. Kuzmak*,
  275 F. Supp. 2d 1100 (C.D. Cal. 2002) .................................................................................9

*J.B.B. Inv. Partners Ltd. v. Fair*,
  37 Cal. App. 5th 1 (Cal. Ct. App. 2019) .....................................................................5, 6, 7, 8

*Rosen v. Urban Commons, LLC*,
  No. 8:20-cv-01973-JLS-DFM, 2023 WL 4155368 (C.D. Cal. May 10, 2023) ................5, 6, 8

*Schott Corp. v. Am. Ins. Co.*,
  No. 6:04-0191, 2006 WL 2988460 (S.D.W.V. Oct. 17, 2006)................................................8

*Speed Shore Corp. v. Denda*,
  605 F.2d 469 (9th Cir. 1979) ................................................................................................5

*Sterling Sav. Bank v. Citadel Dev. Co., Inc.*,
  656 F. Supp. 2d 1248 (D. Or. 2009) .....................................................................................2

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Super. Motels, Inc. v. Rinn Motor Hotels, Inc.*,
    195 Cal. App. 3d 1032 (Cal. Ct. App. 1987) ........................................................................10

*United Comm. Ins. Serv., Inc. v. The Paymaster Corp.*,
    962 F.2d 853 (9th Cir. 1992) ...........................................................................................6

*Willgerodt v. Hohri*,
    953 F. Supp. 557 (S.D.N.Y. 1997)..................................................................................5

*Williamson v. Delsener*,
    874 N.Y.S.2d 41 (1st Dep't 2009) .................................................................................5

**Other Authorities**

Fed. R. Evid. 408 ............................................................................................................2

Local Rule 6-1.................................................................................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This motion arises from Defendants' clear and material breach of a fully negotiated and enforceable settlement agreement, reached after extensive arms-length negotiations and unequivocally accepted by all parties on May 12, 2025. Plaintiffs respectfully request that the Court exercise its well-established equitable authority to enforce the parties' settlement, which was memorialized in detailed email correspondence and included all material terms for a binding contract.

The record is unambiguous: on May 12, 2025, Plaintiffs' counsel transmitted a final, non-negotiable offer, setting forth nine specific and separately enumerated material terms, including ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Defendants' counsel, with full authority, accepted these terms in writing that same day, expressly confirming that the parties had reached an agreement. In reliance on this acceptance, Plaintiffs altered their litigation posture and refrained from further motion practice. Despite this clear meeting of the minds, Defendants subsequently reneged on their obligations by proposing material and unilateral changes to the core terms of the agreement—most notably, by ███████████████████████████████ ███████████████████████████. These eleventh-hour revisions fundamentally undermined the very purpose of the settlement and constituted a material breach, excusing any further performance by Plaintiffs and forcing them to seek immediate judicial intervention to protect their rights.

The law is clear that settlement agreements are favored and enforceable where, as here, the parties have agreed to all material terms and objectively manifested their intent to be bound, regardless of whether a formal written agreement is later executed. Defendants' after-the-fact dissatisfaction or "buyer's remorse" does not provide a basis to avoid enforcement. To hold otherwise would undermine the strong public policy favoring the finality of settlements and the efficient resolution of disputes. For these reasons, Plaintiffs respectfully request that the Court grant

1    this motion and enforce the settlement agreement as set forth in the parties' May 12, 2025

2    correspondence, holding Defendants to the terms to which they unequivocally agreed.

3    **II.    FACTUAL BACKGROUND**

4         The material facts are not in dispute. On May 12, 2025, after extensive settlement

5    discussions, Plaintiffs' counsel emailed Defendants' counsel a last and final offer to settle this

6    matter. *See* Declaration of Reena Jain, Esq. ("Jain Decl."), dated July 28, 2025, ¶ 2, Ex. A at 1–2

7    ("Here it [the proposed settlement agreement] is. Kindly say yes or no. Mr. Jackson will

8    unfortunately and adamantly not accept any further negotiation."). Plaintiffs' offer delineated nine

9    specific, and separately numbered, material terms, the first of which required ██████████

10   ████████████████████████████████████████████████████████████

11   ████████. *Id.*[1] The nine material terms are unambiguous and clear. *See id.*

12        Defendants' counsel unequivocally accepted that same day: "█████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████" *Id.* ¶ 3, Ex. A at 1 (emphasis added). This email exchange by the parties' counsel

18   constitutes an enforceable settlement agreement (the "May 12th Settlement Agreement"). *See id.*

19   Ex. A.

20        Plaintiffs' counsel responded that same day: "Thats fine. Thank you for getting this done."

21   *Id.* ¶ 4, Ex. B at 1. In reliance on Defendants' unequivocal acceptance, Plaintiffs altered their

22

23   [1] The parties' settlement discussions are admissible for the purpose of this motion. *See* Fed. R. Evid.
     408. Courts consistently find settlement communications admissible in proceedings to enforce a
24   settlement agreement. *See, e.g.*, *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir.
     1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the
25   agreement, should it be argued that a party broke the agreement."); *Sterling Sav. Bank v. Citadel
     Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1255-56 (D. Or. 2009) ("Negotiation evidence has been
26   admitted when the probative value was high and admission would not be likely to discourage
     settlement of future disputes .… It is [] commonly admitted for claims arising out of the settlement
27   process or agreement itself, such as to clarify the terms of the settlement agreement, [or] to prove
     breach of the settlement agreement." (citations omitted)).
28
                                                    2
     **MEMORANDUM OF POINTS AND AUTHORITIES**

litigation posture and refrained from further motion practice due to there now being an agreed settlement. *Id.* ¶ 5.

Although they represented that they would memorialize the May 12th Settlement Agreement in a formal written agreement "immediately," Defendants' counsel did not do so. Therefore, in the interest of time, on May 16, 2025, Plaintiffs' counsel circulated ███████████████ that mirrored the accepted terms and would serve as an exhibit to the formal written agreement. *Id.* ¶ 6, Ex. C. After repeated follow-up inquiries from Plaintiffs' counsel, Defendants' counsel circulated a formal written agreement on May 19, 2025. *Id.* ¶ 7, Ex. D. The parties exchanged redlines to the formal written agreement and certain exhibits, but Defendants' counsel did not provide their redlines to ███████████████ until May 28, 2025—two weeks after Plaintiffs' counsel sent the draft. *Id.* ¶ 8, Ex. E.

By the end of May, Defendants' odyssey to finalize the formal written agreement appeared to be nearing its end. *Id.* ¶ 9. All documents except for ███████████████ were finalized. *Id.* On May 29, 2025, after the parties had exchanged redlines of ███████████████ ████████, Defendants' counsel wrote: "███████████████ ████████████████" *Id.* ¶ 10, Ex. F at 1. That same day, Plaintiffs' counsel responded: "█ ████████████████████████████████████" *Id.* ¶ 11, Ex. G at 6. In direct response, Defendants' counsel indicated that they would be sending yet *another* redlined version of ███████████████, but reassured Plaintiffs that this would soon be finalized. *Id.* ¶ 12, Ex. G at 5–6 ("██████████████ ████████████████████").

That was far from the case. On May 30, 2025, Plaintiffs' counsel inquired: "███████ ████████████" *Id.* ¶ 13, Ex. G at 3–4. That same day, Defendants' counsel wrote: "█ ████████████████████████████████████ ████████████████████████████████████ ████████████████" *Id.* ¶ 14, Ex. G at 3. On May 31, 2025, after having received nothing from Defendants' counsel, Plaintiffs' counsel followed up again regarding ████████ ████████████. *Id.* ¶ 15, Ex. G at 2–3. Later that day, Defendants' counsel circulated

3

1  redlines to ██████████████████, writing: "██████████████████

2  ██████████████████████████████." *Id.* ¶ 16,

3  Ex. G at 2. However, ██████████████████████████

4  ██████████████. *Id.* Ex. G at 12–20.



8  The proposed revisions materially altered the parties' agreement that ████████████

9  ██████████████████; specifically, ████████████

10  ██████. <u>First</u>, ████████████████████

11  ████████████████████████████████. *Id.*

12  ¶ 16, Ex. G at 14. Indeed, ████████████████

13  ████████████████████████████████. *Id.*

14  ¶ 16, Ex. G at 12–13. ████████████████████

15  ████████████████████████████████████

16  ██. <u>Second</u>, ████████████████████

17  ██████████████. *Id.* ¶ 16, Ex. G at 12–13.

18  As a result of Defendants' eleventh-hour repudiation of the May 12th Settlement Agreement

19  and with the release of the *Skill House* film imminent, Plaintiffs were forced to immediately move

20  for a preliminary injunction on June 2, 2025.

21  **III.   LEGAL STANDARD**

22  "It is well settled that a district court has the equitable power to enforce summarily an

23  agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)

24  (collecting cases).[2] This is grounded in strong public policy favoring amicable resolution of disputes

26  [2] Although the May 12th Settlement Agreement provides: "████████████████████

27  ██████████████████" (Jain Decl. Ex. A at 2 (emphasis added)), California law

28  applies and this motion was properly brought before this Court. Plaintiffs are moving to enforce the
   May 12th Settlement Agreement; they are not filing a cause of action *for breach* of the May 12th

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    and avoidance of costly and time-consuming litigation. *See Speed Shore Corp. v. Denda*, 605 F.2d

2    469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as

3    a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive

4    litigation.").

5         Courts routinely enforce settlement agreements where a party later refuses to execute a

6    formal agreement. *See J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1, 13-15 (Cal. Ct. App.

7    2019) (granting motion to enforce settlement agreement where the parties agreed to all material

8    terms by email even though the parties prepared a formal written agreement with additional terms

9    and did not execute the formal written agreement); *Fine Design Grp., Inc. v. Balls Mktg. LLC*, No.

10   20-cv-09450-JST, 2022 WL 20208934 at *3-5 (N.D. Cal. May 11, 2022) (same); *see also Rosen v.

11   Urban Commons, LLC*, No. 8:20-cv-01973-JLS-DFM, 2023 WL 4155368, at *4 (C.D. Cal. May

12   10, 2023) (granting motion to enforce unsigned, revised settlement terms agreed to by email because

13   "a settlement agreement need not be signed, or even reduced to writing, to be enforceable").

14        An unexecuted settlement agreement is enforceable where: (1) the agreement is complete

15   with respect to all material terms; and (2) the parties have objectively manifested an intent to be

16   bound by those material terms or have otherwise authorized their respective counsel to settle the

17   dispute. *See Callie*, 829 F.2d at 890; *Hess v. Hanneman*, No. 14-cv-2271-CAB-JMA, 2017 WL

18   _____

19   Settlement Agreement. Nevertheless, New York law parallels California law on this issue. *See

20   Willgerodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside. Afterthought or change of mind are not

21   sufficient to justify rejecting a settlement. A court may relieve a party of the consequences of a settlement agreement '[o]nly where there is cause sufficient to invalidate a contract, such as fraud,

22   collusion, mistake or accident ....'" (citations omitted)); *see, e.g., Forcelli v. Gelco Corp.*, 972 N.Y.S.2d 570, 575–76 (2nd Dep't 2013) ("we hold that where, as here, an email message contains

23   all material terms of a settlement and a manifestation of mutual accord, and the party to be charged, or his or her agent, types his or her name under circumstances manifesting an intent that the name

24   be treated as a signature, such an email message may be deemed a subscribed writing within the meaning of CPLR 2104 so as to constitute an enforceable agreement"); *Williamson v. Delsener*, 874

25   N.Y.S.2d 41, 41–42 (1st Dep't 2009) ("The e-mails exchanged between counsel, which contained their printed names at the end, constitute signed writings within the meaning of the statute of frauds,

26   and entitle plaintiff to judgment. The agreement to settle at 60% of the amount demanded was

27   sufficiently clear and concrete to constitute an enforceable contract. [Defendant's] subsequent refusal to execute form releases and a stipulation of discontinuance did not invalidate the

28   agreement." (citations omitted)).

5

**MEMORANDUM OF POINTS AND AUTHORITIES**

6027015, at *3 (S.D. Cal. Dec. 4, 2017). The critical inquiry for the Court is whether the parties reached an agreement as to all material terms and intended to be bound by those terms.

To interpret settlement agreements, courts look to the intent objectively manifested in the agreement and the surrounding conduct. *See Bill Poon & Co. Architects, Inc. v. Bafaiz*, C 07-5566 PJH, 2009 WL 688917, at *3 (N.D. Cal. Mar. 16, 2009) ("'A settlement agreement is treated as any other contract for purposes of interpretation.'" (citation omitted)). Accordingly, the subjective intent of the party denying the enforceability of a settlement agreement is irrelevant if unexpressed. *See United Comm. Ins. Serv., Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). The fact that a party is " merely [] 'unhappy' with a contract term does not evince intent not to be bound by it, nor does it excuse nonperformance." *Rosen*, 2023 WL 4155368, at *4.

## IV.   ARGUMENT

### A.    The May 12th Settlement Agreement Is a Complete Agreement with All Material Terms Set Forth Therein

The email record leaves no room for doubt: the parties entered into a defined and complete settlement agreement as to the material terms of settlement on May 12, 2025. The May 12th Settlement Agreement, which fully specified nine material terms, was memorialized in an email from Plaintiffs to Defendants. In that email, Plaintiffs made clear that they would "not accept any further negotiation" and asked that Defendants' counsel "kindly say yes or no." Jain Decl. ¶ 2, Ex. A at 1. That same day, Defendants' counsel unequivocally accepted those nine terms: " ███████ ████████████████████████████████████████████████████████████ ████████████████████████████ " *Id.* ¶ 3, Ex. A at 1.

*J.B.B.* is instructive. There, the plaintiffs emailed the defendants a final settlement offer, stating that it was the plaintiffs' "LAST AND FINAL OFFER"; stating the ten material terms of the settlement; and stating "WE require a YES or NO on this proposal, you need to say 'I accept' and I will work the balance of this holiday weekend to get the paperwork drafted." *J.B.B.*, 37 Cal. App. 5th at 9. After the defendants unequivocally accepted, the plaintiffs prepared a formal written agreement. *Id.* at 11. The defendants failed to sign the formal written agreement, and the plaintiffs moved to enforce the settlement agreement that the parties entered into by email. *Id.* at 5. The

California Court of Appeal held that the emails demonstrated an objective intent to agree to all material terms: the plaintiffs' final email offer "included specific terms (settlement amount, payment deadline, release of claims, etc.) delineated in 10 separately numbered paragraphs, which expressly invited defendants' acceptance." *Id.* at 13. The fact that plaintiffs planned to follow up with a formal written agreement did not invalidate the agreement entered into by email. *Id.* at 12.

Like *J.B.B.*, Plaintiffs' counsel sent by email a last and final offer outlining nine unambiguous and clear material terms, including ████████████████████████. Jain Decl. ¶ 2, Ex. A. Defendants' counsel unmistakably accepted those material terms and indicated that they would prepare a written agreement reflecting "████████████████." *Id.* (emphasis added). There is no indication that Defendants' acceptance was *conditioned* on the preparation of any formal documents, or any other circumstance. *See, e.g.*, *Fine Design Grp.*, 2022 WL 20208934, at *4 ("Because the parties reached agreement on all material terms of their settlement, and The Agency has not shown that they intended their settlement to be effective only if it was reduced to a signed agreement, the Court will grant Fine Design's motion [to enforce the settlement agreement].").

The fact that the May 12th Settlement Agreement █████████████████████ ████████████████████████████████████████████████████ ████████, does not alter the analysis. The relevant portion of the agreement states: "██ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████" Jain Decl. Ex. A at 2. As a threshold matter, the phrase "█████████████████ █████████" refers to May 12, 2025—the date the agreement was agreed upon and entered into by email. *Id.* Even if that were not the case, the ██████████████ remains clear and unambiguous: ██ ████████████████████████████████████████████████████ ███. *Id.* Thus, there is no confusion regarding ████████████████████.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Moreover, the subsequent memorialization of the agreed-upon terms does not nullify the May 12th Settlement Agreement. *See, e.g.*, *J.B.B.*, 37 Cal. App. 5th at 12 ("[T]he fact that plaintiffs planned to follow up with a formal written agreement, which they did on July 11, 2013, does not render the earlier agreement invalid, given the parties' communications on July 4 and 5."); *Fine Design*, 2022 WL 20208934, at *3 ("[T]he fact that Fine Design may have added additional terms to a later draft written agreement does not render the parties' prior August 2, 2021 agreement unenforceable."); *see also Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (Cal. Ct. App. 1999) ("Where the writing at issue shows 'no more than an intent to further reduce the informal writing to a more formal one' the failure to follow it with a more formal writing does not negate the existence of the prior contract." (citation omitted)).

It was not until *three weeks* after Defendants' written and unconditional acceptance of Plaintiffs' settlement offer that Defendants reneged. Jain Decl. ¶ 16, Ex. G. By accepting Plaintiffs' offer, Defendants agreed to, among other things, a requirement of ███████████████████ ██████████████████████████████████████████████████████. *Id.* ¶ 3, Ex. A. The fact that Defendants later changed their minds about the material terms that they agreed to is an insufficient basis to avoid enforcement of a valid settlement agreement. *See Rosen*, 2023 WL 4155368, at *4 ("Buyer's remorse is an insufficient basis to avoid enforcement of the Settlement Agreement."); *see also Schott Corp. v. Am. Ins. Co.*, No. 6:04-0191, 2006 WL 2988460, at *2 (S.D.W.V. Oct. 17, 2006) ("Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement, and the fact that the agreement is not in writing does not render it unenforceable."); *Brown v. Nationscredit Com.*, No. 3:99-cv-592 (EBB), 2000 WL 888507, at *2 (D. Conn. June 23, 2000) ("[A] settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing.").

There is a defined and complete agreement as to the material terms of the settlement, and thus the May 12th Settlement Agreement is enforceable against Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**B.**     **Defendants Manifested an Objective Intent to Be Bound to the May 12th Settlement Agreement**

Defendants are bound by the terms of the agreement negotiated and agreed upon on their behalf by their counsel. Under California law, "a client may validly authorize his or her lawyer to make a settlement decision, and further that, under certain circumstances, the opposing party may enforce the resulting settlement agreement against the client." *Inamed Corp. v. Kuzmak,* 275 F. Supp. 2d 1100, 1120 (C.D. Cal. 2002). Defendants cannot now back out of a settlement that their attorneys entered on their behalf pursuant to their authority to do so. Indeed, Plaintiffs relied upon the objective manifestation of settlement authority and did not continue to litigate this action between May 12, 2025 (when the settlement was agreed upon) and May 31, 2025 (when Defendants reneged).

**C.**     **Defendants' Material Breach of the May 12th Settlement Agreement Forced Plaintiffs to Move for a Preliminary Injunction**

Plaintiffs' filing of the motion for a preliminary injunction after Defendants reneged does not change the fact that the May 12th Settlement Agreement is enforceable. The parties agreed to the nine enumerated terms outlined in Plaintiffs' May 12, 2025 email—none of which contain a promise that Plaintiffs would refrain from moving for a preliminary injunction. And in that email, Plaintiffs made clear that they would "not accept any further negotiation." Jain Decl. ¶ 2, Ex. A at 1. Only *after* Defendants had unequivocally accepted Plaintiffs' settlement offer did defense counsel remark: "███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████." *Id.* ¶ 3, Ex. A at 1. This observation reflected nothing more than an expectation that, with a settlement now agreed, injunctive relief would no longer be necessary.

Even if, *arguendo*, Plaintiffs' forbearance from seeking injunctive relief was a term of the May 12th Settlement Agreement (which it was not), Defendants' own breach forecloses any attempt to enforce that term. Under California law, "a material breach excuses further performance by the innocent party." *De Burgh v. De Burgh*, 250 P.2d 598, 601 (Cal. 1952). Three weeks after entering into the May 12th Settlement Agreement and just as the parties were finalizing the formal written

9

documents, Defendants circulated ██████████████████████████████ ██████████████████████████ at all. Jain Decl. ¶ 16, Ex. G. Per these revisions, █ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ In sum, these sweeping revisions changed the very substance of what was supposed to be ███████ ████████████████ and frustrated the very purpose of the May 12th Settlement Agreement. *See Super. Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (Cal. Ct. App. 1987) (finding that a breach is material if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract); *see also* 3 WILLISTON ON CONTRACTS (4th ed. 2002) § 63:3, at 440 ("A material breach of one aspect of a contract generally constitutes a material breach of the whole contract." (footnote omitted)).

By virtue of Defendants' material breach, Plaintiffs were excused from any purported performance and were forced to move for a preliminary injunction. *See De Burgh*, 250 P.2d at 600. Indeed, faced with Defendants' eleventh-hour repudiation and the imminent release of the *Skill House* film, Plaintiffs had no practical choice but to try to mitigate their losses by seeking *immediate* injunctive relief. In order for the Court to hear oral argument on Plaintiffs' motion for a preliminary injunction in advance of the film's July 11, 2025 scheduled release date, Plaintiffs had to file their motion by no later than June 2, 2025 (*two days after Defendants reneged*) because of the practical realities of the Court's schedule and film industry custom and practice regarding the actual timing of releases. The only applicable hearing date then available on the Court's calendar was July 3, 2025 (Jain Decl. ¶ 17), and that required Plaintiffs to file their motion on June 2, 2025. *See* Local Rule 6-1 ("If mailed, the notice of motion shall be served not later than thirty-one (31) days before the Motion Day designated in the notice."). The July 10, 2025 hearing date was closed (Jain Decl. ¶ 17); but even if it had been open, that would have meant scheduling the hearing only a few hours before the film's *actual* release. As explained by Defendants, "[t]he film has a release date of July 11, 2025, which means, per custom, it will begin being shown in theaters on *the evening of July 10, 2025*." Dkt. 26-3 ¶ 9 (emphasis added).

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    Any attempt to characterize Plaintiffs' motion for a preliminary injunction as a breach must

2    fail; it was Defendants who had breached. Accordingly, the May 12th Settlement Agreement

3    remains fully enforceable against Defendants.

4    **V.    CONCLUSION**

5    Based on the foregoing reasons, Plaintiffs respectfully request that this Court enforce the

6    settlement agreement that the parties entered into on May 12, 2025 and find that Defendants are

7    bound to the terms of the settlement as memorialized in the written email correspondence.

8

9    DATED: July 28, 2025                    BLANK ROME LLP

10

11

12                                    By: */s/ Jonathan A. Loeb*
                                         Jonathan A. Loeb
13                                    Attorneys for Plaintiffs
                                       CURTIS J. JACKSON, III AND NYC VIBE, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this memorandum is no more than 25 pages, which complies with Rule IX.C of Judge Vera's Civil Standing Order.

Dated: July 28, 2025

*/s/ Jonathan A. Loeb*
Jonathan A. Loeb

**MEMORANDUM OF POINTS AND AUTHORITIES**

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Plaintiffs, certifies that on July 28, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Case Management and Electronic Case Filing (CM/ECF) system. The undersigned further certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 28, 2025

*/s/ Jonathan A. Loeb*
Jonathan A. Loeb

**MEMORANDUM OF POINTS AND AUTHORITIES**