LOEB & LOEB LLP
JOHN M. GATTI (SBN 138492)
jgatti@loeb.com
LAUREN J. FRIED (SBN 309005)
lfried@loeb.com
TYLER DOWNING (SBN 339537)
tdowning@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone:     +1 310-282-2000
Facsimile:      +1 310-282-2200

*Attorneys for Defendants*
RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC, and GENTV LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS J. JACKSON, III, NYC VIBE, LLC, and G-UNIT FILM & TELEVISION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC, and GENTV LLC,<br><br>Defendants. | Case No. 2:25-cv-03623-HDV-RAO<br><br>*Assigned to the Hon. Hernán D. Vera*<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>*[Filed concurrently with: (1) Declaration of Lauren J. Fried; and (2) [Proposed] Order]*<br><br>Date:           October 23, 2025<br>Time:           10:00 a.m.<br>Courtroom:   5B<br><br>Complaint Filed:   April 24, 2025<br>FAC Filed:            September 3, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 23, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5B of the above-entitled Court, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendants Ryan Kavanaugh ("Kavanaugh"), Skill House Movie LLC ("Skill House Movie"), and GenTV LLC ("GenTV"), will and hereby do move the Court, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the claims asserted against them in the Complaint filed by Plaintiffs Curtis J. Jackson, III, NYC Vibe, LLC, and G-Unit Film & Television LLC (collectively, "Plaintiffs"), on the following grounds:

1. Plaintiffs' Tenth Cause of Action for Breach of Contract (the June 26th Email) should be dismissed as to Defendant Kavanaugh as the Plaintiffs do not allege a contract between Kavanaugh and any Plaintiff or any other basis for Kavanaugh's liability for the alleged contract.

2. Plaintiffs' Eleventh Cause of Action for Breach of Contract (the May 12th Settlement Agreement) should be dismissed as Plaintiffs' pleadings and the documents incorporated by reference into the First Amended Complaint show that there is no enforceable settlement agreement between the parties nor any breach.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities and [Proposed] Order submitted herewith; any additional pleadings that Defendants may file, and any additional authorities and arguments on which Defendants may rely in support of this Motion; the pleadings, papers and other records on file in this action, and on such additional evidence, argument, or other matters that may be presented at or before the hearing on the Motion.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

241803920.1

2

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

This Motion is made following the conference of counsel required pursuant to Local Rule 7-3 of the U.S. District Court of the Central District of California, which took place via video conference on September 10, 2025.

Respectfully submitted,

Dated: September 17, 2025

LOEB & LOEB LLP

By: */s/ John M. Gatti*
John M. Gatti
*Attorneys for Defendants*
RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC and GENTV LLC

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

241803920.1

3

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

## **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 5 |
| II. | BACKGROUND | 9 |
|  | A. ALLEGATIONS IN THE FAC | 9 |
|  | 1. The Parties | 9 |
|  | 2. Jackson Performs His Scenes, Promotes the Film, Then Waits Years to Try to Coerce Defendants | 10 |
|  | 3. Plaintiffs' Initial Complaint | 11 |
|  | 4. Plaintiffs' Failed Preliminary Injunction Motion | 11 |
|  | 5. Release of the Film | 12 |
|  | 6. Plaintiffs' Baseless Motion to Enforce Settlement and the Alleged Settlement Agreement | 12 |
|  | 7. Plaintiffs' Amended Complaint | 13 |
| III. | LEGAL STANDARD | 14 |
| IV. | ARGUMENT | 14 |
|  | 1. Plaintiffs' Tenth Cause of Action for Breach of Contract Fails As Against Kavanaugh As Kavanaugh Is Not Alleged to Be a Party to Any Agreement | 15 |
|  | 2. Plaintiffs' Cause of Action for Breach of the Supposed Settlement Agreement Fails Because There Was No Settlement Agreement and No Breach | 16 |
|  | 3. Dismissal Should Be With Prejudice | 19 |
| V. | CONCLUSION | 19 |

241803920.1

4

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alkayali v. den Hoed*,
  2018 U.S. Dist. LEXIS 162154, at*11-15 (S.D. Cal. Sept. 20, 2018) .................................. 15

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*,
  2014 U.S. Dist. LEXIS 174406 (N.D. Cal. Dec. 17, 2014) ..................................................... 15

*AMG & Assocs., LLC v. AmeriPride Servs.*,
  2016 U.S. Dist. LEXIS 193972 (C.D. Cal. Aug. 29, 2016) .................................................... 18

*Buckley v. Cracchiolo*,
  2014 U.S. Dist. LEXIS 17517 (C.D. Cal. Feb. 7, 2014) ......................................................... 15

*Burcham v. City of Los Angeles*,
  562 F. Supp. 3d 694 (C.D. Cal. 2022) .................................................................................... 14

*Ciarmella v. Reader's Dig. Ass'n*,
  131 F.3d 320 (2d Cir. 1997) .................................................................................................... 17

*EMM Innovations LLC v. Remind101, LLC*,
  2025 U.S. Dist. LEXIS 119941 (C.D. Cal. June 24, 2025) .................................................... 14

*English v. Mortgage Store Fin., Inc.*,
  2019 U.S. Dist. LEXIS 112846 (C.D. Cal. July 8, 2019) ....................................................... 19

*Inamed Corp. v. Kuzmak*,
  275 F. Supp. 2d 1100 (C.D. Cal. 2002) .................................................................................. 17

*Jackson v. Kavanaugh*,
  2025 U.S. Dist. LEXIS 170845 (C.D. Cal. July 11, 2025) ............................................... 8, 12

*Johnson v. Starbucks Corp.*,
  2015 U.S. Dist. LEXIS 195252 (C.D. Cal. Dec. 10, 2015) .................................................... 14

*McCrudden v. Demarco*,
  2022 U.S. Dist. LEXIS 219253 (C.D. Cal. Oct. 6, 2022) ................................................ 15, 16

*Perfumebay.com Inc. v. eBay Inc.*,
  506 F.3d 1165 (9th Cir. 2007) .......................................................................................... 16, 17

*Rickenbacker Int'l Corp. v. Lollar Guitars, Inc.*,
  2014 U.S. Dist. LEXIS 194713 (C.D. Cal. Sept. 3, 2014) ...................................................... 17

241803920.1

5

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

*Terry v. Conlan*,
   131 Cal. App. 4th 1445 (2005) .................................................................................. 17

*Tianhai Lace Co. Ltd. v. Zoetop Bus. Co. Ltd.*,
   2024 U.S. Dist. LEXIS 48286 (C.D. Cal. Mar 8, 2024) ............................................. 16, 18

*Weddington Prods. Inc. v. Flick*,
   60 Cal. App. 4th 793 (1998) ....................................................................................... 17

*Williams v. Playscripts*,
   2024 U.S. Dist. LEXIS 144316 (E.D.N.Y. Aug. 13, 2024) ........................................ 17

*Zaragoz v. Cty. of Riverside*,
   2021 U.S. Dist. LEXIS 53797 (C.D. Cal. Feb. 18, 2021) .......................................... 19

**Other Authorities**

Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter
   Group 2025) ¶ 12:955.5 ............................................................................................ 16, 17

## I.      INTRODUCTION

This case involves Curtis Jackson (aka "50 Cent") and two of his related companies' attempts to shirk contractual commitments and extract additional compensation related to scenes Jackson performed *three years ago* without complaint. After filing the lawsuit, Plaintiffs continued the attempted shakedown with a baseless request for a preliminary injunction. When the Court rejected that effort, Plaintiffs pivoted to an attempt to enforce a settlement that was never consummated, despite proposed terms expressly premised on the film's unimpeded release. That motion is currently pending before the Court and, as discussed in Defendants' opposition, fails for several independent reasons. The First Amended Complaint ("FAC") is simply more of the same – replete with contradictions and allegations wildly divorced from the evidence already before the Court. Most of Plaintiffs' claims must be decided later in this case, after discovery further confirms the baselessness of their allegations. This motion to dismiss focuses on two claims that can be readily dismissed solely from Plaintiffs' allegations and the documents incorporated into the FAC.

*First*, Plaintiffs allege Defendants Ryan Kavanaugh and Skill House Movie breached an email that "does not constitute an enforceable agreement." Notwithstanding the direct contradiction in Plaintiffs' pleadings, even under a liberal reading of the FAC, there is no allegation that **Kavanaugh** is personally a party to any contract for Jackson's acting services. Without any such allegation or any other alleged basis for Kavanaugh to be held liable for that agreement, the FAC cannot state a claim for breach of contract against him.

*Second*, Plaintiffs' claims for breach of contract related to the supposed "May 12th Settlement Agreement" fail because no such agreement exists. As already detailed at length in Defendants' opposition to Jackson's similarly baseless Motion to Enforce Settlement Agreement, the document Jackson seeks to enforce as a final binding settlement is unenforceable because it leaves "material terms" unsettled, anticipates a formal signed agreement, and the terms are too indefinite.

These claims should be dismissed with prejudice. Documents incorporated by reference into the FAC and documents already filed by Plaintiffs in this action show that adequately pleading

241803920.1

8

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

either claim is not an option. The baselessness of Plaintiffs' remaining claims and Jackson's disregard for his own commitments will be shown as the case progresses.

## II. BACKGROUND

### A. ALLEGATIONS IN THE FAC[1]

#### 1. THE PARTIES

Jackson, more well known as "50 Cent" is, according to himself, a "world-famous rapper, actor, producer, entrepreneur, and philanthropist." FAC ¶ 20. Jackson was ranked 17th on Billboard's 2023 best rapper list, falling behind rappers like Snoop Dogg, Drake, J. Cole, Kanye West, and Nicki Minaj. *See* FAC ¶ 29 & n.3.[2] In addition to using his social media accounts to "promote his various goods and services," Jackson uses these sites to post about films on other streaming services, AI generated photos, and jokes about Sean Combs. FAC ¶ 35 & ns. 7-8.[3] NYC Vibe, LLC, ("NYC Vibe") is a company somehow "used to hold Jackson's intellectual property" while G-Unit Film & Television, Inc. ("G-Unit") is a company Jackson vaguely uses "in connection with his film and television endeavors." FAC ¶¶ 21-22.

Ryan Kavanaugh is a successful film and television financier and producer. FAC ¶ 23. Skill House Movie, LLC ("Skill House Movie") is the corporate vehicle for the recently released film *Skill House* which features Jackson as an unwitting villain. FAC ¶¶ 1, 26. GenTV, LLC ("GenTV"), is a production company and was a producer of *Skill House*. FAC ¶ 27. Plaintiffs allege that GenTV is a "streaming service" but the GenTV website repeatedly linked in the FAC belies this allegation as it simply advertises *Skill House* with links to "play trailer" and "get tickets"

---

[1] This factual recitation treats Jackson's allegations as true to the extent they are not conclusory or contradicted by documents incorporated by reference in his pleadings, as required on a Motion to Dismiss. *See infra* Section III.
[2] *See* https://www.billboard.com/lists/best-rappers-all-time/ (last visited Sept. 15, 2025).
[3] *See* FAC ¶ 35 at n.7 (linking to Jackson's Instagram page, https://www.instagram.com/50cent/); https://www.instagram.com/p/C9p2nEfuMMT/?igsh=NjZiM2M3MzIxNA== (July 20, 2024 post on Jackson Instagram Page); https://www.instagram.com/p/DJ3D-hHtpFl/?igsh=NjZiM2M3MzIxNA%3D%3D (May 19, 2025 post on Jackson Instagram Page); https://www.instagram.com/p/DJ4i4mwuj5b/?igsh=NjZiM2M3MzIxNA%3D%3D (May 20, 2025 post on Jackson Instagram page); https://www.instagram.com/p/DK2uFcWNGGQ/?igsh=NjZiM2M3MzIxNA%3D%3D (June 13, 2025 post on Jackson Instagram Page).

241803920.1
9
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations
MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

and includes the first nine minutes of the film as a teaser. FAC ¶¶ 27 & n.2, 82.[4] In other words, GenTV.com is an alleged streaming website that does not offer any streaming.

### 2. JACKSON PERFORMS HIS SCENES, PROMOTES THE FILM, THEN WAITS YEARS TO TRY TO COERCE DEFENDANTS

In June 2022, Kavanaugh approached Jackson's representatives about Jackson acting in and producing *Skill House*. FAC ¶ 38. The parties negotiated an agreement, with Stephen J. Savva, Jackson's "outside general counsel" laying out the terms of the deal on June 26, 2022. *See* FAC ¶¶ 178-79, Dkt. 26-4, Ex. 2. Among the terms set out by Savva were provisions setting forth that Jackson would be credited as a producer and that Jackson would "provide reasonable social media marketing and promotional support of the film." Dkt. 26-4, Ex. 2. Later, Skill House's counsel sent a final version of a term sheet and certificate of employment to Jackson's representatives, including Mr. Savva. FAC ¶¶ 169-170, Dkt. 26-4, Ex. 13. That agreement, consistent with the earlier discussions, provided that Jackson would be accorded acting and producing credits and that Jackson would provide customary "marketing and publicity services." Dkt. 26-4, Ex. 13 (Term Sheet §§ 6-7). The terms also included a representation by Jackson that he and G-Unit were free to grant the rights to use Jackson's appearance and trademarks. *Id.* (Certificate of Employment). The agreement did not disclose that Jackson's trademarks were actually held by NYC Vibe. *Id.* Further, the agreement did not give Jackson creative control or approval rights over the film nor were there any terms limiting where the film would be distributed. *Id.*

On August 1, 2022, Jackson filmed promotional content for *Skill House*. FAC ¶ 43. The next day, Jackson filmed his scenes. FAC ¶ 44. Plaintiffs (incorrectly) allege that Jackson did not sign the term sheet and certificate of employment on August 2, 2022. FAC ¶ 45.

For *years*, Jackson acted as if there was an agreement for his appearance in the film. Jackson, through his designated PR Representative, gave "approvals" for the film's promotional content. *See* FAC ¶ 43 n.9.[5] In fact, the same linked social media profiles with millions of

---

[4] https://skillhouse.gentv.com/ (last visited Sept. 15, 2025); https://gentv.com (last visited Sept. 15, 2025)
[5] Jackson alleges that "any approvals that Jackson's press consultant may have purportedly given would have been in connection with the content Jackson filmed on August 1, 2022" seemingly in

241803920.1

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

10

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

followers that Jackson says he uses to "promote his various goods and services, including his film and television projects" *still* contain posts promoting *Skill House*. FAC ¶ 35 & ns. 7-8.[6] It was not until March 2025 that Jackson pulled the rug out from under Defendants' feet, suddenly contending that his appearance in the film was somehow unauthorized. *See* FAC ¶¶ 89-90. Despite Defendants insistence that there was no dispute (given Jackson's agreement to appear in the film), after Jackson was informed of the film's release date his lawyers "had multiple communications with Defendants' counsel" to reach a "resolution" "without judicial intervention." *See id*.

### 3. PLAINTIFFS' INITIAL COMPLAINT

When Jackson was unable to successfully extract extra-contractual concessions from Defendants, Plaintiffs filed this lawsuit. *See* Dkt. 1 ("Compl."). The initial complaint (like the FAC) takes umbrage with Jackson's appearance in *Skill House* and his (contractually required) crediting as an actor and producer. *See, e.g.*, Compl. ¶ 3; FAC ¶¶ 3, 169 (Dkt. 26-4, Ex. 13), 178 (Dkt. 26-4, Ex. 2). Despite Jackson's years-long silence on the supposed lack of agreement, Plaintiffs asserted a plethora of claims premised upon the film's use of his "name, image, voice, and trademarks" and sought "no less than $5,000,000" even though the terms of the agreement called for just $100,000 (plus additional amounts tied to the film's performance). *See, e.g.*, Compl. ¶¶ 1, 58, 65, 72 and page 22; FAC ¶¶ 169 (Dkt. 26-4, Ex. 13), 178 (Dkt. 26-4, Ex. 2).

### 4. PLAINTIFFS' FAILED PRELIMINARY INJUNCTION MOTION

More than a month after filing his Complaint, Jackson sought a preliminary injunction stopping the distribution of *Skill House* on the eve of its release. *See* Dkt. 22; FAC ¶ 24. As part of the preliminary injunction, Jackson explained that he and Defendants were "[u]nable to reach a resolution" regarding the case. *Id.* at 8. Just a few days after the hearing, the Court denied Jackson's

---

direct contrast to his sworn declaration and the same social media profiles he links in his complaint. FAC ¶ 35 & ns. 7-8.
[6] FAC ¶ 35 & ns. 7-8 (linking to Jackson's Facebook and X/Twitter accounts); https://m.facebook.com/story.php?story_fbid=pfbid0369EDbA9JCMuVTDDSjpYuyj9hkMNYYKGCJmQC4ojZKpFPcHKFVZDZ73iEdkSgCHEjl&id=100050432532195&mibextid=wwXIfr (August 20, 2022 post on Jackson Facebook page); https://fb.watch/Cay01nHByy/?mibextid=wwXIfr&fs=e (*Skill House* trailer posted on Jackson Facebook page); https://x.com/50cent/status/1556702358117171200 (August 8, 2022 Jackson Twitter post); https://x.com/50cent/status/1556286765668962304 (August 7, 2022 Jackson Twitter post).

241803920.1

11

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

motion and indicated that a more fulsome order explaining its reasoning would be forthcoming. Dkt. 36. The Court's subsequent order explained that the communications between the parties evinced their "intent to be bound by the June 26 terms" and that "[t]he parties conduct also suggest[ed] a meeting of the minds." Dkt. 41; *Jackson v. Kavanaugh*, 2025 U.S. Dist. LEXIS 170845, at *11-12 (C.D. Cal. July 11, 2025). As the Court explained:

> Jackson arrived on set to film his scenes and promotional content, as the parties had envisioned since at least June 26, 2022. In the months that followed, the parties worked together to promote the film, with Jackson's publicist approving and disapproving of proposed media coverage as the parties contemplated. . . . Indeed, when the parties first discovered that they could not locate the executed agreements, Savva proposed 'properly finaliz[ing] the paperwork,' suggesting that the parties viewed the Final Agreement as a formality memorializing their existing agreement.

*Id.* Given that "the record before the Court suggest[ed] that Jackson consented to the use of his name and image in connection with the film" the Court held that "Plaintiffs [] failed to carry their burden of establishing a likelihood of success—or even serious questions—on the merits" and denied the injunction. *Id.* at 12-13.

### 5. RELEASE OF THE FILM

After the preliminary injunction was denied, the film had a "limited theatrical release." FAC ¶ 97. Plaintiffs allege that following the release "Jackson has received offers dramatically lower than expected for his acting services." FAC ¶ 106. The FAC does not explain what offers were expected for Jackson's acting services. And it does not acknowledge that demand for Jackson's acting services may have been stifled by **Jackson's public attempt to circumvent his contractual commitments** through this lawsuit.

### 6. PLAINTIFFS' BASELESS MOTION TO ENFORCE SETTLEMENT AND THE ALLEGED SETTLEMENT AGREEMENT

Following the denial of Plaintiffs' motion for preliminary injunction and the release of the film, Plaintiffs filed a Motion to Enforce Settlement Agreement, contending that the parties entered a settlement on May 12, 2025, **before** Plaintiffs filed their preliminary injunction motion. Dkt. 47. That motion—which, as explained in Defendants' opposition, is meritless—is currently pending before the Court. *See* Dkts. 47, 56, 63.

241803920.1
12
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

### 7. PLAINTIFFS' AMENDED COMPLAINT

On September 3, 2025, Plaintiffs filed their First Amended Complaint. Dkt. 71. The FAC recycles most of the same factually faulty allegations from the original complaint and includes additional claims for breach of contract. One of the new claims is premised on the July 30, 2022, final version of the binding term sheet. FAC ¶¶ 41, 169-170. Another new claim is based on the June 26, 2022 email from Jackson's counsel, Savva. FAC ¶¶ 178-79. Jackson alleges that the June 26, 2022 email (but not the July 30, 2022 final term sheet) "does not constitute an enforceable agreement." FAC ¶ 182. There are no allegations that Kavanaugh was personally a party to the June 26th email agreement (that Jackson also alleges does not exist). *See* FAC ¶¶ 177-85.

Despite the fact that Plaintiffs' motion to enforce settlement is currently pending before the Court and their recognition that the Court's ruling on that motion very well "may affect" that claim, the FAC also includes a cause of action for breach of the supposed settlement agreement. *See* FAC ¶¶ 186-92. The basis for the supposed settlement agreement is an email exchange between counsel. As Jackson alleges, on May 12, 2025, Plaintiffs' counsel Craig Weiner, emailed Defendants' counsel with a list of "nine specific, and separately numbered, material terms." *See* FAC ¶¶ 108-109; *see also* Dkt. 47-1, Ex. A; Dkt. 67, Ex. A. Those "material terms" included the future negotiation and preparation of *multiple* required documents in addition to terms triggered by the execution of a formal agreement. Dkt. 47-1, Ex. A; Dkt. 67, Ex. A.[7] In response to Mr. Weiner's email, counsel for Defendants responded:

> My client accepts your terms. We will move forward in preparing the written settlement agreement to reflect these agreed upon terms and all customary terms. ***This is based on the understanding that now that we have an agreement, your client will not file the preliminary injunction and we will not need to incur any additional fees responding***. *Please confirm* . . . .

*Id.*; FAC ¶ 109 (emphasis added). Plaintiffs' counsel responded "Thats [sic] fine." FAC ¶ 110.

Leaving out a litany of additional context already in the record, Plaintiffs go on to allege that "Defendants breached paragraph 1 of the May 12th Settlement Agreement by (i) failing to pay

---

[7] The proposed settlement terms are under seal pursuant to this Court's orders. *See* Dkts. 65, 59. To avoid additional redactions and sealing, this motion avoids explicit discussion of terms of the agreement that have not already been disclosed in relation to the Motion to Enforce Settlement briefing and the hearing on that Motion.

241803920.1
13
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

the requisite settlement amount; and (ii) materially altering and changing the method for securing payment of the settlement amount such that it was no longer the method that had been agreed to." FAC ¶ 111. Plaintiffs also vaguely allege "Defendants also failed to otherwise comply with their obligations under the May 12th Settlement Agreement" (without even a hint as to what those obligations might be). FAC ¶ 111.

### III. LEGAL STANDARD

To survive a motion to dismiss brought under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *EMM Innovations LLC v. Remind101, LLC*, 2025 U.S. Dist. LEXIS 119941, at *6 (C.D. Cal. June 24, 2025) (Vera, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While factual allegations are generally taken as true, the court does not accept "unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Johnson v. Starbucks Corp.*, 2015 U.S. Dist. LEXIS 195252, at *5-6 (C.D. Cal. Dec. 10, 2015). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *EMM Innovations LLC*, 2025 U.S. Dist. LEXIS 119941, at *6. This plausibility requirement "demands more than 'a sheer possibility that a defendant acted unlawfully'" and requires the "court to draw on its judicial experience and common sense." *Id.*

In addition to the pleadings, when evaluating a motion to dismiss courts also look to documents "incorporated by reference in the complaint." *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 701 (C.D. Cal. 2022).

### IV. ARGUMENT

As previously discussed, this motion to dismiss narrowly addresses deficiencies in two of Plaintiffs' causes of action: the claim for breach of contract premised upon the "June 26th Email" and the claim for breach of contract premised upon the "May 12th Settlement Agreement." The former claim lacks allegations sufficient to state a claim against Mr. Kavanaugh. And the latter

241803920.1

14

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

claim fails because the allegations and documents incorporated by reference into the complaint show that there was no settlement agreement and no breach.

### 1. PLAINTIFFS' TENTH CAUSE OF ACTION FOR BREACH OF CONTRACT FAILS AS AGAINST KAVANAUGH AS KAVANAUGH IS NOT ALLEGED TO BE A PARTY TO ANY AGREEMENT

First, Plaintiffs' Tenth Cause of Action for breach of contract must be dismissed as against Kavanaugh because there are no allegations that Kavanaugh was a party to any contract or otherwise purported to individually bind himself. It is well established that "[a] contract cannot bind a nonparty . . . and directors and officers are not personally liable on contracts signed by them for and on behalf of a corporation unless they purport to bind themselves individually." *McCrudden v. Demarco*, 2022 U.S. Dist. LEXIS 219253, at *37-38 (C.D. Cal. Oct. 6, 2022). Absent factual allegations sufficient to support the application of alter ego liability—which Plaintiffs do not and cannot allege—courts routinely dispose of contract claims against individual officers or members. *Id.* ("Although DeMarco signed the Agreement on behalf of Stassi as the president, Plaintiff has not specifically alleged, and there is nothing in the Agreement to reflect, that DeMarco entered the Agreement in his individual capacity. The mere fact that Demarco and/or Daily may have owned, been officers of, or partners in, Stassi, is insufficient to impose liability on these defendants."); *Buckley v. Cracchiolo*, 2014 U.S. Dist. LEXIS 17517, at *10 (C.D. Cal. Feb. 7, 2014) ([D]efendants' status as officers of [companies] . . . does not, without more, make them liable for actions of their respective companies."); *Allegro Consultants, Inc. v. Wellington Techs., Inc.*, 2014 U.S. Dist. LEXIS 174406, at *9-11 (N.D. Cal. Dec. 17, 2014); *Alkayali v. den Hoed*, 2018 U.S. Dist. LEXIS 162154, at*11-15 (S.D. Cal. Sept. 20, 2018).

Plaintiffs simply do not allege any basis for Kavanaugh himself to be held liable for breach of the alleged June 26th contract. Plaintiffs allege that the negotiations were between "then-production counsel for" *Skill House*, Jackson's "outside general counsel" and Kavanaugh and covered Jackson's appearance in and service as a producer for *Skill House*. FAC ¶ 40. The FAC

241803920.1

15

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

further acknowledges that there was a "corporate vehicle" for the film's operations: Skill House Movie. FAC ¶ 26. The alleged contract itself makes no indication that Kavanaugh was to be individually bound. Dkt. 26-4, Ex. 2. And there is no allegation (or facts alleged supporting an inference) that it was Kavanaugh in his individual capacity that was a party to the Agreement instead of the film's "corporate vehicle."

Absent any allegations that Kavanaugh "entered the Agreement in his individual capacity," the breach of contract claim against Kavanaugh must be dismissed. *McCrudden*, 2022 U.S. Dist. LEXIS 219253, at *38.

## 2. PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF THE SUPPOSED SETTLEMENT AGREEMENT FAILS BECAUSE THERE WAS NO SETTLEMENT AGREEMENT AND NO BREACH[8]

Plaintiffs' claim for breach of the alleged settlement agreement also fails as there was no settlement agreement as a matter of law nor is there any breach. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Tianhai Lace Co. Ltd. v. Zoetop Bus. Co. Ltd.*, 2024 U.S. Dist. LEXIS 48286, at *6 (C.D. Cal. Mar 8, 2024) (Vera, J.) (citation omitted). Under California law, "[a]n agreement to make an agreement, without more, is not a binding contract" and "a manifest intention that the formal agreement is not complete until reduced to a formal writing to be executed" governs absent any allegation of waiver or agreement to the contrary. *Id.*

Further, to constitute a binding settlement, there must be a "*complete*" agreement; in other words, there must be agreement on "all material terms." *Id.* (internal quotation marks and citation omitted). Similarly, a supposed settlement agreement must be "sufficiently definite." *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1178 (9th Cir. 2007); *see also* Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 12:955.5. "If an

---

[8] Counsel agree that the Court's ruling on the Plaintiffs' Motion to Enforce Settlement may be dispositive of this claim. FAC at 43 n.30.

241803920.1
16
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations
MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

essential element is reserved for the future agreement of both parties, as a general rule the promise can give rise to no legal obligation until such future agreement." *Id.* (citation omitted).

In this case, the allegations and documents incorporated by reference into the FAC show that the alleged settlement falls short for multiple reasons.

***First***, the purported agreement is facially incomplete, rendering it "too indefinite for enforcement." *See Perfumebay.com Inc.*, 506 F.3d at 1178. Plaintiffs allege that each of the "nine specific, and separately numbered" items in the May 12, 2025 email are "**material terms**." FAC ¶ 108 (emphasis added). But several of these "material terms"—specifically paragraphs 1, 4, and 6—call for additional writings or other items that were yet to be settled. Dkt. 67, Ex. A at ¶¶ 1, 4, 6. As multiple courts have recognized, the presence of these terms means there "is no obligation" until the called for future agreement on the additional documents is reached or the referenced documents are settled. *Perfumebay.com*, 506 F.3d at 1178; *Weddington Prods. Inc. v. Flick*, 60 Cal. App. 4th 793, 815-818 (1998) (no agreement where settlement called for a licensing agreement without the terms of that licensing agreement having been determined); *Rickenbacker Int'l Corp. v. Lollar Guitars, Inc.*, 2014 U.S. Dist. LEXIS 194713, at *5 (C.D. Cal. Sept. 3, 2014) (no enforceable agreement where parties reserved "quality control standard" for future agreement); *Ciarmella v. Reader's Dig. Ass'n*, 131 F.3d 320, 325 (2d Cir. 1997) (letter of reference called for by draft settlement not agreed to); *Williams v. Playscripts*, 2024 U.S. Dist. LEXIS 144316, at *16-17 (E.D.N.Y. Aug. 13, 2024) (confidentiality agreement not finalized).

***Second***, and relatedly, the terms of the supposed settlement agreement are too vague to, on their own, constitute an enforceable agreement. "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120 (C.D. Cal. 2002). Parties "assenting to the goals of [a] settlement, without agreeing to the means that were material to the settlement, demonstrates the parties never formed an enforceable contract." *Terry v. Conlan*, 131 Cal. App. 4th 1445, 1459 (2005). Here, while the parties may have set out goals for what an eventual settlement would look

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

like, the mechanisms for such a settlement are absent from the May 12 email that Plaintiffs seek to enforce. The May 12 email has no provision for release and it does not specify terms for dismissal. Dkt. 67, Ex. A. It has obligations triggered upon execution of a settlement agreement, which is not alleged to have ever happened. *Id.* And, as just discussed, it calls for additional materials whose contents and forms are not alleged to have been agreed to. *Id.* There is no way for the court to determine the respective duties of the parties from the May 12 email and, as such, it cannot constitute an enforceable settlement.

***Third***, and finally, the face of the supposed settlement agreement demonstrates that the parties intended only to be bound upon the execution of a written, signed agreement. *See Tianhai Lace Co. Ltd.*, 2024 U.S. Dist. LEXIS 48286, at *6 ("If . . . there is a manifest intention that the formal agreement is not to be complete until reduced to a formal writing to be executed, there is no binding contract until this is done." (citation omitted)). "Material terms" in the supposed settlement are ***explicitly tied to execution of a formal agreement***. *See* Dkt. 67, Ex. A ¶ 1(a). This is fatal to Plaintiffs' claim as Plaintiffs do not and cannot allege there was any waiver or abandonment of the understanding that the terms would be reduced to a formal writing. *AMG & Assocs., LLC v. AmeriPride Servs.*, 2016 U.S. Dist. LEXIS 193972, at *14-15 (C.D. Cal. Aug. 29, 2016) (dismissing contract claim based on email where email signaled "formal agreement was still to come" and "[a]s pled, Plaintiff only agreed to move forward with a plan that was ultimately to end with a valid agreement").

Of course, even if there was a settlement agreement, Plaintiffs have not adequately alleged any breach by Defendants. The only description of Plaintiffs' supposed breach in the FAC is:

> Defendants breached the paragraph 1 of the May 12th Settlement Agreement by (i) failing to pay the requisite settlement amount; and (ii) materially altering and changing the method for securing payment of the settlement amount such that it was no longer the method that had been agreed to. Defendants also failed to otherwise comply with their obligations under the May 12th Settlement Agreement.

FAC ¶ 111. The alleged facts do not support this conclusory allegation. First, the assertion that "Defendants also failed to otherwise comply with their obligations under the May 12th Settlement Agreement" is hopelessly vague and fails to give any notice—let alone fair notice—of the basis for

241803920.1

18

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

MOTION TO DISMISS
CASE NO. 2:25-CV-03623-HDV-RAO

a claim. *See Zaragoz v. Cty. of Riverside*, 2021 U.S. Dist. LEXIS 53797, at *6 (C.D. Cal. Feb. 18, 2021) ("[C]omplaint must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). Second, the alleged settlement agreement belies Plaintiffs' conclusory allegation that the payment term of the supposed settlement was breached. ***The terms are unambiguous that no payment has come due*** and the supposed agreement also does not set forth any deadline by which "the method for securing payment of the settlement amount" would have to be finalized and supplied. Dkt. 67, Ex. A ¶ 1. Indeed, if there was an Agreement, the party in breach would be Plaintiffs, who failed to fulfill their own obligations (such as refraining from filing a motion for preliminary injunction). *Id.*; FAC ¶¶ 9, 110.

### 3.  DISMISSAL SHOULD BE WITH PREJUDICE

While leave to amend is liberally granted, where existing allegations, documents incorporated into the pleadings show that amendment would be futile, the court is empowered to dismiss with prejudice. *English v. Mortgage Store Fin., Inc.*, 2019 U.S. Dist. LEXIS 112846, at *8 (C.D. Cal. July 8, 2019).

Here there are no facts consistent with the challenged pleading that could salvage Plaintiffs' claim. Indeed, documents already on file in this action and documents expressly incorporated by reference into the complaint demonstrate that Jackson would be unable to allege Kavanaugh himself was a party to the alleged June 26th email contract or facts sufficient to cure the deficiencies in the supposed settlement agreement. *See* Dkt. 67, Ex. A (alleged "settlement agreement"); Dkt. 26-4, Ex. 2 (June 26th email); *see also* Dkt. 22 at 8 (Jackson preliminary injunction motion confirming that there was no "resolution with Defendants"). Accordingly, the claims should be dismissed without leave to amend.

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Tenth Cause of Action should be dismissed as against Defendant Ryan Kavanaugh and Plaintiffs' Eleventh Cause of Action should be dismissed in its entirety.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

| | | |
|---|---|---|
| 1 | Dated: September 17, 2025 | Respectfully submitted, |
| 2 | | LOEB & LOEB LLP |
| 3 | | |
| 4 | | By: /s/ John M. Gatti |
| 5 | | John M. Gatti |
| 6 | | *Attorneys for Defendants* RYAN KAVANAUGH, SKILL HOUSE MOVIE LLC, and GENTV LLC |

241803920.1

20

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this memorandum complies with the Court's Civil Standing Order (revised).

Dated: September 17, 2025

*/s/ John M. Gatti*
John M. Gatti